USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-2012 MANUEL MALDONADO-DENIS, ET AL., Plaintiffs, Appellants, v. REINALDO CASTILLO-RODRIGUEZ, ET. AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Demetrio Fernandez, with whom Melva A. Quintana was on ___________________ ___________________ brief, for appellants. John F. Nevares, with whom Ilsa Y. Figueroa-Arus and Smith & _______________ _____________________ _______ Nevares were on brief, for appellee Carlos J. Lopez-Feliciano. _______ Carlos Lugo-Fiol, Deputy Solicitor General, with whom Pedro ________________ _____ A. Delgado-Hernandez, Solicitor General, and Mabel Ramon Milian ____________________ ___________________ were on brief, for appellee Ismael Betancourt-Lebron. _________________________ May 6, 1994 ________________________ SELYA, Circuit Judge. This appeal arises out of an SELYA, Circuit Judge. _____________ action brought pursuant to 42 U.S.C. 1983 (1988). In it, appellants strive to convince us that the district court erred in granting summary judgment in favor of defendants Ismael Betancourt-Lebron (sometimes referred to as Ismael Betancourt y Lebron) and Carlos J. Lopez-Feliciano. Although we are troubled by the district court's action expediting the appeal under Fed. R. Civ. P. 54(b), we affirm the entry of summary judgment. I. I. __ Statement of the Case Statement of the Case _____________________ In the early morning hours of February 15, 1991, a police officer, Jose M. Colon-Burgos, allegedly shot and killed a young man, Manuel E. Maldonado-Irizarry, in the line of duty. The decedent's family members, appellants here, brought a section 1983 suit in which they claimed, inter alia, that Colon- _____ ____ Burgos used excessive force; that the homicide constituted a wrongful deprivation of the decedent's civil rights; and that other law enforcement officers conspired to hide the truth. In mounting this offensive, appellants cut a wide swath; they sued Colon-Burgos, several of his confreres, and certain high-ranking officials who had no direct connection to the shooting or its aftermath. Betancourt-Lebron, who was the superintendent of police when the incident occurred, and Lopez- Feliciano, the former superintendent, fell into this latter 2 group.1 Appellants alleged in substance that Betancourt-Lebron did not adequately supervise officers under his command, and thereby exhibited deliberate indifference to the proper discharge of his duties. Lopez-Feliciano, appellants said, exhibited similar indifference during his tenure as superintendent, and, in addition, failed properly to train members of the police force. On February 22, 1993, Betancourt-Lebron moved for summary judgment on appellants' third amended complaint. Appellants requested, and received, several extensions of time. Eventually, they tendered an opposition. On June 25, Lopez- Feliciano moved for summary judgment. Appellants did not serve an opposition, but, instead, requested a further extension of time within which to respond. On July 13, the district court denied the motion for more time, and, eight days later, granted both Rule 56 motions.2 This appeal followed. II. II. ___ Appellate Jurisdiction Appellate Jurisdiction ______________________ Fed. R. Civ. P. 54(b) permits the entry of final judgment as to fewer than all the parties or claims in a multi- party action, thus clearing the way for earlier-than-usual appeals, "upon an express determination that there is no just ____________________ 1Lopez-Feliciano served as superintendent of police from early 1986 until he resigned effective December 31, 1988. He had no official standing on February 15, 1991. 2At the same time, the lower court entered the July 13 order on the docket and granted a motion to dismiss that had been filed on behalf of another high-ranking official, defendant Aida Myrna Velez. Appellants have not ventured an appeal from this aspect of the court's order. 3 reason for delay" in entering judgment.3 In this case, the district court made the requisite finding and directed entry of judgment notwithstanding that the action remained unadjudicated as to numerous other parties. The court focused on the existence of a special circumstance: one of the defendants, Reinaldo Castillo-Rodriguez (Castillo), had declared bankruptcy, triggering the automatic stay, 11 U.S.C. 362; the case, the court felt, would likely "be dormant for a number of months pending the disposition of [the] bankruptcy matter"; and, therefore, it would "save time" to permit the appeal to go forward "while the issue of the bankruptcy stay was addressed before the bankruptcy court." Because this determination implicates the existence vel non of ___ ___ appellate jurisdiction, we must satisfy ourselves concerning its correctness even though the parties have acquiesced in it. See ___ Spiegel v. Trustees of Tufts College, 843 F.2d 38, 43 (1st Cir. _______ _________________________ 1988); United States General, Inc. v. Albert, 792 F.2d 678, 680 ____________________________ ______ (7th Cir. 1986). This court has used a two-step approach in connection ____________________ 3The rule provides in pertinent part: When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . . Fed. R. Civ. P. 54(b). 4 with Rule 54(b) determinations. See Geiselman v. United States, ___ _________ ______________ 961 F.2d 1, 3-5 (1st Cir.) (per curiam), cert. denied, 113 S. Ct. _____ ______ 261 (1992); Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 _________ ______________________ (1st Cir. 1991); Spiegel, 853 F.2d at 42-43. First, the ruling _______ underlying the proposed judgment must itself be final in the sense that it disposes completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally. See Spiegel, 843 F.2d ___ _______ at 43. That requirement plainly is satisfied here; the orders granting brevis disposition terminated appellants' claims against ______ Betancourt-Lebron and Lopez-Feliciano in their entirety. The second step of the Spiegel pavane is harder to _______ master. It requires tracing the interrelationship between, on one hand, the legal and factual basis of the claims undergirding the proposed judgment (i.e., the jettisoned claims), and on the ____ other hand, the legal and factual basis of the claims remaining in the case. See id. Once the court of appeals has prepared the ___ ___ necessary schematic, it must then ponder the balance struck by the district court between the desirability of immediate review and the undesirability of promoting piecemeal appeals. See ___ Kersey v. Dennison Mfg. Co., 3 F.3d 482, 486 (1st Cir. 1993); ______ __________________ Morrison-Knudsen Co. v. Archer, 655 F.2d 962, 965 (9th Cir. 1981) ____________________ ______ (Kennedy, J.). Here, the second half of the Spiegel paradigm presents _______ a borderline question. Appellants sued Betancourt-Lebron and Lopez-Feliciano for improperly discharging supervisory 5 responsibilities in ways that led to the decedent's death. But adjudicating those claims necessitates an exploration of the facts concerning the shooting and alleged coverup. See, e.g., ___ ____ Voutour v. Vitale, 761 F.2d 812, 820-21 (1st Cir. 1985), cert. _______ ______ _____ denied, 474 U.S. 1100 (1986). Thus, there is a significant ______ imbrication between the jettisoned claims and the remaining claims. District courts should go very slowly in employing Rule 54(b) when, as in this instance, the factual underpinnings of the adjudicated and unadjudicated claims are intertwined. See ___ Spiegel, 843 F.2d at 45. _______ We think, too, that the Rule 54(b) determination rests on shaky ground for other reasons. In the first place, whether the record is scanned from the standpoint of the plaintiffs, the defendants, or the court, it discloses no urgent need for immediate review. In the second place, trial of the remaining claims has the potential of mooting the issue of supervisory liability and rendering further appellate review of the summary judgment order superfluous. Given these circumstances, and given the "long-settled and prudential policy against scattershot [appeals]," id. at 42, the rush to enter an immediate judgment ___ strikes us as problematic. To be sure, the scales are not entirely out of balance. The judgment did dispose fully of all claims against a group of parties appellees and Velez and those claims raised a set of unique issues. And, moreover, the district court had an arguably plausible reason the enforced stay of litigation on the 6 district court level for resorting to Rule 54(b). These factors tend to balance out, to some extent, the factors that counsel in favor of a more deliberate approach. While we, if writing on a pristine page, would have accorded greater weight to considerations of judicial economy and the importance of discouraging broadly piecemeal appeals, three things persuade us to allow the Rule 54(b) determination to stand: first, the special circumstance presented by the stay; second, the differences, both legal and factual, that distinguish the claims against appellees from the claims against the other defendants; and third, the deference owed to the trial court's determinations under Rule 54(b), see Spiegel, 843 F.2d at 42. ___ _______ Although the call is excruciatingly close, we are not prepared to say that the court below overstepped the bounds of its discretion here.4 III. III. ____ The Summary Judgment Standard The Summary Judgment Standard _____________________________ Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a grant of summary judgment de novo, see Quaker __ ____ ___ ______ State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 ________________________ ________________ (1st Cir. 1989), scrutinizing the entire record in the light most flattering to the nonmovant and indulging all reasonable ____________________ 4Though we permit the appeal to go forward, we urge the district courts, in borderline cases, to exercise restraint rather than allowing appeals to proceed in an inchmeal fashion. 7 inferences in that party's favor. See Brennan v. Hendrigan, 888 ___ _______ _________ F.2d 189, 191 (1st Cir. 1989); Mack v. Great Atlantic & Pacific ____ ________________________ Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). _______ Summary judgment practice has a rhythm of its own. We have described that rhythm in the following way: The movant must put the ball in play, averring "an absence of evidence to support the nonmoving party's case." The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both "genuine" and "material." A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Put another way, a "genuine" issue exists if there is "sufficient evidence supporting the claimed factual dispute" to require a choice between "the parties' differing versions of the truth at trial." A "material" issue is one that "affect[s] the outcome of the suit," that is, an issue which, perforce, "need[s] to be resolved before the related legal issues can be decided." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) _______ ________________ (citing and quoting, inter alia, Celotex Corp. v. Catrett, 477 _____ ____ _____________ _______ U.S. 317, 325 (1986), and Anderson v. Liberty Lobby, Inc., 477 ________ ____________________ U.S. 242, 250 (1986) (other citations omitted)). On issues as to which the nonmovant bears the ultimate burden of proof, he may not defeat a properly focused motion for summary judgment by relying upon mere allegations or evidence that is less than significantly probative. See Anderson, 477 ___ ________ U.S. at 249-50; Pagano v. Frank, 983 F.2d 343, 348 (1st Cir. ______ _____ 1993). Put another way, a party opposing summary judgment must "present definite, competent evidence to rebut the motion." 8 Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), _______ _________________ cert. denied, 112 S. Ct. 2965 (1992); accord Fragoso v. Lopez, _____ ______ ______ _______ _____ 991 F.2d 878, 887 (1st Cir. 1993). Thus, summary judgment likely will be appropriate if the nonmovant elects to rest upon some combination of "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds ____________ ______________ Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). ___________ There is another important dimension to summary judgment practice: motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal. As we have warned, "[b]rash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st ___ _________________________ Cir. 1993). IV. IV. ___ Supervisory Liability Supervisory Liability _____________________ Although a superior officer cannot be held vicariously liable under 42 U.S.C. 1983 on a respondeat superior theory, __________ ________ see Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); ___ ______ ______________________ Gutierrez-Rodgriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. ____________________ _________ 1989), he may be found liable under section 1983 on the basis of his own acts or omissions, see Bowen v. Manchester, 966 F.2d 13, ___ _____ __________ 20 (1st Cir. 1992); Manarite v. Springfield, 957 F.2d 953, 957 ________ ___________ (1st Cir.), cert. denied, 113 S. Ct. 113 (1992); Gutierrez- _____ ______ __________ Rodriguez, 882 F.2d at 562. _________ 9 One way in which a supervisor's behavior may come within this rule is by formulating a policy, or engaging in a custom, that leads to the challenged occurrence. See Oklahoma ___ ________ City v. Tuttle, 471 U.S. 808, 823-24 (1985). Thus, even if a ____ ______ supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it. See Miranda v. Munoz, 770 F.2d 255, 260 (1st Cir. ___ _______ _____ 1985); DiMarzo v. Cahill, 575 F.2d 15, 17-18 (1st Cir.), cert. _______ ______ _____ denied, 439 U.S. 927 (1978); cf. Pinto v. Nettleship, 737 F.2d ______ ___ _____ __________ 130, 132 (1st Cir. 1984) (barring liability under 1983 for actions beyond supervisor-defendant's control). Under this rubric, a supervisor may be held liable for what he does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights. See, e.g., City of Canton v. ___ ____ ______________ Harris, 489 U.S. 378, 388 (1989); Manarite, 957 F.2d at 957; ______ ________ Gutierrez-Rodriguez, 882 F.2d at 562; see also Rivas v. Freeman, ___________________ ___ ____ _____ _______ 940 F.2d 1491, 1495 (11th Cir. 1991). Deliberate indifference, however, is not the be-all and the end-all of a section 1983 claim premised on supervisory liability. As we explain below, there is a causation element as well. To succeed on a supervisory liability claim, a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's 10 conduct to the subordinate's violative act or omission. See ___ Bowen, 966 F.2d at 20; Lewis v. Smith, 855 F.2d 736, 738 (11th _____ _____ _____ Cir. 1988); Pinto, 737 F.2d at 132. This causation requirement _____ can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights; for example, a sufficient casual nexus may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. See, e.g., Larez v. Los Angeles, 946 F.2d 630, 646 ___ ____ _____ ___________ (9th Cir. 1991); Lipsett v. University of Puerto Rico, 864 F.2d _______ _________________________ 881, 902-03 (1st Cir. 1988). Consequently, deliberate indifference to violations of constitutional rights can forge the necessary linkage between the acts or omissions of supervisory personnel and the misconduct of their subordinates. See ___ Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. __________ _____ _____ denied, 111 S. Ct. 2266 (1991). ______ A causal link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. When the supervisor is on notice and fails to take corrective action, say, by better training or closer oversight, liability may attach. See Brown v. ___ _____ Crawford, 906 F.2d 667, 671 (11th Cir. 1990), cert. denied, 111 ________ _____ ______ S. Ct. 2056 (1991); Gutierrez-Rodriguez, 882 F.2d at 564-66. ___________________ We hasten to add that isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference. See Tuttle, 471 U.S. at 823-24; ___ ______ 11 Rodriquez v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991); see also _________ _______ ___ ____ Voutour, 761 F.2d at 820 (finding no liability though police _______ chief knew of past complaints of brutality; plaintiff failed to show a pattern so striking that it would permit an inference of supervisor's encouragement or approval of officers' actions). By like token, proof of mere negligence, without more, is inadequate to ground supervisory liability. See Febus-Rodrigues v. ___ _______________ Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994); Haynesworth v. _________________ ___________ Miller, 820 F.2d 1245, 1261 (D.C. Cir. 1987). Gross negligence ______ can signify deliberate indifference and serve as a basis for supervisory liability if it is causally connected to the actions that work the direct constitutional injury. See Voutour, 761 ___ _______ F.2d at 820. Hence, inadequate training of subordinates may be a basis for a section 1983 claim against a superior officer. See, ___ e.g., Harris, 489 U.S. at 388-89; Hopkins v. Andaya, 958 F.2d ____ ______ _______ ______ 881, 888 (9th Cir. 1992); Kibbe v. Springfield, 777 F.2d 801, 807 _____ ___________ (1st Cir. 1985), cert. dismissed, 480 U.S. 257 (1987). _____ _________ V. V. __ Betancourt-Lebron's Motion Betancourt-Lebron's Motion __________________________ Though the district court granted summary judgment in favor of both Betancourt-Lebron and Lopez-Feliciano, appellants approach each ruling from a different direction. We, therefore, bifurcate our analysis. We begin with Betancourt-Lebron, but we do not linger long. The nisi prius roll discloses no evidence on ____ _____ which a claim of supervisory liability against that defendant might properly be predicated. 12 To be sure, the record contains evidence from which a jury reasonably could conclude that the remaining defendants the police officers allegedly involved in the shooting and the coverup abridged the decedent's civil rights. But appellants' attempts to link Betancourt-Lebron to these activities are impuissant. There is no competent proof of actual participation, or of a policy of tolerating similar violations, or of deliberate indifference. Nor is there proof of a pattern of misconduct sufficient to put the superintendent of police on inquiry notice.5 In sum, considering the record in the light most congenial to appellants, we can find only tenuous assertions strung together by strands of speculation and surmise. More is required to survive summary judgment. See Fragoso, 991 F.2d at ___ _______ 887; Medina-Munoz, 896 F.2d at 8. Supervisory liability attaches ____________ only if a plaintiff can demonstrate by material of evidentiary quality an affirmative link between the supervisor's conduct and the underlying section 1983 violation. See Bowen 966 F.2d at 20; ___ _____ Pinto, 737 F.2d at 132. Here, the record is bereft of any proof, _____ ____________________ 5Appellants did proffer two previous administrative complaints, one naming Colon-Burgos and the other naming Castillo. These complaints have only marginal relevance to the claims at issue in this appeal. The complaint against Colon- Burgos relates to his conduct during an alleged dispute with his former mother-in-law. The complaint against Castillo relates to his alleged discourteousness in refusing to return a firearm to its owner. There is absolutely no connection between these complaints and the charges levelled against the officers in this case. A _ fortiori, there is no connection between the complaints and ________ appellants' claims against the appellees. 13 direct or inferential, of a causal link between Betancourt- Lebron's activities and the alleged deprivation of constitutional rights. It follows that the district court appropriately ordered summary judgment. VI. VI. ___ Lopez-Feliciano's Motion Lopez-Feliciano's Motion ________________________ On the record before the district court, Lopez- Feliciano's entitlement to summary judgment cannot seriously be disputed.6 Indeed, appellants offer no developed argumentation to the contrary; rather, they assign error to the denial of their Rule 6(b) motion for additional time in which to marshal an opposition. Thus, the question presented in respect to this motion is not a matter of evidentiary sufficiency but a matter of procedural orthodoxy. We start with first principles. A trial court may enlarge the time for responding to motions, including motions for summary judgment.7 See, e.g., United States v. One Lot of U.S. ___ ____ ______________ _______________ ____________________ 6This statement reflects our assessment of the record as it stands, recognizing that, even if unopposed, a motion for summary judgment can only be granted if the record discloses the movant's entitlement to judgment as a matter of law. See Mendez v. Banco ___ ______ _____ Popular de Puerto Rico, 900 F.2d 4, 7 (1st Cir. 1990). ______________________ 7The rule on which appellants rely provides in pertinent part: [T]he court for cause shown may at any time in its discretion (1) . . . order [a time] period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act 14 Currency ($68,000), 927 F.2d 30, 33-35 (1st Cir. 1991); Mendez v. __________________ ______ Banco Popular de Puerto Rico, 900 F.2d 4, 5-6 (1st Cir. 1990). _____________________________ The district court is afforded great leeway in granting or refusing enlargements, see Mendez, 900 F.2d at 6, and its ___ ______ decisions are reviewable only for abuse of that discretion, see ___ id. at 7. This deference is grounded in common sense. We deem ___ it self-evident that "appellate courts cannot too readily agree to meddle in such case-management decisions lest the trial court's authority be undermined and the systems sputter." Id. ___ However, there are few, if any, guidelines beyond these abecedarian principles, for decisions about whether enlargements of time are warranted tend to be case specific. The facts surrounding the Rule 6(b) dispute in this case are simple. Lopez-Feliciano moved for summary judgment on Friday, June 25, 1993. Under prevailing practice, appellants' response was due within ten days. See D.P.R. Loc. R. 311.5, ___ 311.12. On Friday, July 2, appellants' counsel advised the court, by means of an informative motion, that he would "be on vacation leave from July 3, 1993 until August 6, 1993." On July 6, after counsel had left for Europe, appellants for the first time requested, in a curt, two-paragraph motion, that the court extend the time for filing their opposition to Lopez-Feliciano's summary judgment initiative until late August. Appellants' motion alleged, in a purely conclusory fashion, that Lopez- ____________________ was the result of excusable neglect . . . . Fed. R. Civ. P. 6(b). 15 Feliciano's motion "contained voluminous exhibits and questions of law which require an additional time to study and investigate." On July 13, the district court denied the sought-after extension. The court noted that it had "patiently granted several requests of this nature [for appellants' benefit] in the past," and indicated that it could not justify "continu[ing] [to] [allow] . . . delay in the disposition of pending matters." No opposition was ever filed, and the court granted brevis ______ disposition in Lopez-Feliciano's favor on July 21. It is important to pin down what this appeal does not involve. Appellants did not, by affidavit or other proffer, invoke Fed. R. Civ. P. 56(f),8 claiming, say, that they needed more time for additional discovery. By like token, appellants did not advert to any circumstances beyond their control, such as an attorney's illness, to justify an enlargement of time. Rather, they sought the extension primarily for the convenience ____________________ 8The rule reads: Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Fed. R. Civ. P. 56(f). 16 of counsel, who wished to take a leisurely vacation.9 Viewed in this light, the ruling is supportable. The judge, not counsel, must run the court and set the agenda. This entails establishing reasonable time parameters and ensuring compliance with them. Reversing the roles of court and counsel would invite chaos. See de la Torre v. Continental Ins. Co., 15 ___ ____________ ____________________ F.3d 12, 14 (1st Cir. 1994); Higuera v. Pueblo Int'l, Inc., 585 _______ ___________________ F.2d 555, 557 (1st Cir. 1978). Consequently, it will be a rare case in which an appellate court will fault a trial judge for refusing to elevate counsel's convenience over the need to maintain respect for court rules that require filings to be made within a set time frame. As we acknowledged in an analogous situation, "a district judge often must be firm in managing crowded dockets and demanding adherence to announced deadlines." Mendez, 900 F.2d at 7. ______ Of course, judges are not tinpot dictators, and firmness must not be confused with tyranny. But, here, the denial of appellants' Rule 6(b) motion, silhouetted against the historical background of the case, seems reasonable, not despotic or even arbitrary. Two circumstances are of particular interest in this regard. ____________________ 9Indeed, given the wholly conclusory nature of the other reasons advanced in the July 6 motion, the plethoric discovery already completed, and the similarity between Lopez-Feliciano's motion and the summary judgment motion filed earlier by Betancourt-Lebron (to which appellants had already responded), there was ample room for the district court to conclude that counsel's convenience comprised the only impetus behind the ____ extension request. 17 First, the disputed extension request came after appellants trespassed on the court's indulgence many times over many months, e.g., amending the complaint three times, obtaining ____ at least five enlargements of time to oppose earlier motions for summary judgment, and successfully rescheduling pretrial conferences on no fewer than four occasions. Second, appellants' lawyer exhibited meager respect for the court. Although his European respite had been planned since March, the lawyer filed his informative motion at the beginning of July and filed the extension request three days after his actual departure. Appellants' only excuse for this discourtesy rings hollow. They point out that, on June 18, they filed a request to postpone the pretrial conference, then set for July 20, on the ground that their counsel "will be in Europe from July 3, 1993 until August 6, 1993." On July 1, the district court granted the request, shifting the conference to August 17. Appellants contend that their request necessarily alerted the court to counsel's vacation plans, and that the granting of the request lulled them into believing that the court would work around counsel's absence. This contention will not wash. For one thing, the district court did not act on the request until July 1; thus, appellants could not have placed any meaningful reliance on the granting of the request. This lack of reliance is adequately evinced by appellants' subsequent filing, in rapid sequence, of the informative motion and the Rule 6(b) motion. For another 18 thing, the June 18 request did not fairly apprise the district court of the overall situation. Appellants limited the request to the timing of the pretrial conference. The fact that counsel wished personally to attend that proceeding shed no definitive light upon his intentions vis-a-vis more mundane matters. Indeed, since the request did not mention other aspects of the litigation, the court reasonably could infer that counsel had made suitable arrangements and would not require any special dispensation in regard to motion practice, discovery proceedings, and the like. The issue does not require further elaboration. A petition for a continuance is always suspect when it is within the power of the petitioner to alter the conditions that allegedly preclude him from acting within the allotted period of time. Here, appellants can identify nothing that suffices to dispel this cloud. And a variety of other factors support the reasonableness of the district court's action in holding appellants to the rule: the filing of Lopez-Feliciano's motion for summary judgment came as no surprise; appellants had ample opportunity including roughly eight days before counsel departed within which to respond to it; they had the benefit of ample discovery, rendering it unlikely that a further opportunity to submit additional materials would have influenced the outcome of the case; and, finally, they failed to file a Rule 56(f) motion. This omission speaks volumes. Litigants who are unprepared to respond in a timely manner to motions for summary 19 judgment cannot be encouraged or permitted to essay end runs around the substantial requirements of Rule 56(f). See generally ___ _________ Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., ___________________ ________________________________________ 840 F.2d 985, 988 (1st Cir. 1988) (discussing requirements). When all is said and done, the district court's refusal to grant the requested extension comes down to a matter of discretion. The test for abuse of discretion is well settled in this circuit, see, e.g., United States v. Roberts, 978 F.2d 17, ___ ____ _____________ ________ 21 (1st Cir. 1992); Independent Oil & Chem. Workers of Quincy, ____________________________________________ Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. ____ __________________________ 1988), and does not bear reiteration. Applying this test, we conclude that, though the district court's decision perhaps can be characterized as tough-minded, the court made no obvious mistake either in isolating or in weighing the appropriate factors. While attorneys are entitled to take vacations, a trial lawyer who wishes to plan a lengthy pleasure trip has a corresponding obligation to advise the judge and opposing counsel well in advance, and to make appropriate arrangements for case coverage in his absence. When, as now, an attorney fails to take elementary precautions, and the trial court declines to alter course, an appellate tribunal should not interfere without compelling reason. After all, "[r]ules are rules and the parties must play by them." Mendez, 900 F.2d at 7. Here, ______ appellants have articulated no plausible basis for us to intervene. Our conclusion that the district court did not err in 20 denying appellants' Rule 6(b) motion ends our inquiry. Appellants offer no developed argumentation to demonstrate that, on the record as it stands, summary judgment could have been avoided. The point is, therefore, effectively conceded. See Ryan v. Royal ___ ____ _____ Ins. Co., 916 F.2d 731, 734 (1st Cir. 1990) ("It is settled in ________ this circuit that issues adverted to in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned."). The judgment in favor of Lopez-Feliciano must stand. VII. VII. ____ Conclusion Conclusion __________ We need go no further. Having examined the record with care, we are satisfied that the appeal is properly before us. In the exercise of that discerned jurisdiction, we conclude that the court below did not err either in denying appellants further time or in granting appellees' motions for summary judgment. Although the rhetoric of supervisory liability reverberates from the pages of appellants' briefs, the record contains no evidence of culpability sufficient to relate the rhetoric to the reality of events. Affirmed. Affirmed. ________ Concurring opinion follows 21 BOWNES, J., separately concurring. I concur in the BOWNES, J., separately concurring. ____________________________________ result reached in this case and commend the writing judge for his scholarly and clearly written discussion of supervisory liability. I concur in the result reached on the appellate jurisdiction question, but I do not agree that the issue was "excruciatingly close." I think the district court was clearly correct in finding that "there is no just reason for delay." 22