56 F.3d 59
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Nabih AOUDE, Plaintiff, Appellant,
v.
MOBIL OIL CORPORATION, Defendant, Appellee.
 No. 94-2096.
 United States Court of Appeals,
First Circuit.
 May 24, 1995.
 
 Jeffrey A. Gorlick with whom Law Offices of Robert E. Weiner was on brief for appellant.
 Edward C. Duckers with whom Lowell R. Stern, Hogan & Hartson, Thomas J. Sartory and Goulston & Storrs, P.C. were on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.
 PER CURIAM.
 
 
 1
 This case arises because Mobil Oil Corporation sought to terminate the franchise of its distributor Nabih Aoude. Aoude had for a number of years operated Aoude Mobil as a retail gasoline station in Medway, Massachusetts; the agreement between Aoude and Mobil forbade Aoude from using Mobil's name in connection with the sale of any other brand of gasoline. On February 28, 1992, Mobil proposed to terminate Aoude's franchise for violation of this restriction and Aoude immediately filed suit in district court. After staying the termination, the district court granted summary judgment in favor of Mobil. On Aoude's appeal we consider the propriety of summary judgment de novo, drawing all reasonable inferences in favor of Aoude. Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).
 
 
 2
 Under the Petroleum Marketing Practices Act, 15 U.S.C. Secs. 2801 et seq., Mobil was entitled to terminate the franchise for "willful" mislabeling or misbranding of motor fuel. 15 U.S.C. Sec. 2802(c)(10). Based on the record before it, the district court ruled that it was beyond reasonable dispute that on February 6, 1992, somewhere between 200 and 300 gallons of non- Mobil gasoline were diverted from another nearby station (controlled by Aoude and managed by his brother) and deposited in one of the tanks at Aoude's Mobil station. The gasoline in the tank was subsequently offered for sale through Mobil- labeled facilities.
 
 
 3
 On this appeal, Aoude purports to dispute the determination that the 200 plus gallons were deposited in the Aoude Mobil station tank, but this claim is frivolous. The driver who delivered the gasoline gave uncontradicted testimony that he had deposited the gasoline in the Aoude Mobil tank. This direct testimony was supported by two eyewitnesses, who saw the truck parked at the Mobil Station apparently unloading, and by Aoude's own tank measurements, which showed that on February 7 one of his tanks had an unexplained surplus of about 275 gallons. Based on the evidence, no reasonable juror could doubt that 200 plus gallons were delivered to Aoude, stored in one of his tanks, and ultimately sold to the public.[1]
 
 
 4
 It is also irrelevant under the law that samples of the gasoline, collected by Mobil representatives on the day of the misdelivery, showed no insufficient concentration of Mobil additives: it would not be a defense to misbranding or mislabeling that the non-Mobil gasoline delivered by the truck was too small an amount to dilute seriously the Mobil gasoline in the tank. "Misbranding occurs when a franchisee passes off other gasoline as that of the franchisor's by dispensing the gasoline through pumps and at stations bearing the franchisor's logo." Dandy Oil, Inc. v. Knight Enterprises, Inc., 654 F. Supp. 1265, 1270 (E.D. Mich.), appeal dismissed, 830 F.2d 193 (6th Cir. 1987).
 
 
 5
 Aoude's only serious claim on appeal is that the requirement of willfulness in the statute presents an issue of material fact in this case. Although this requirement has not been widely parsed, both Aoude and Mobil cite us to the Ninth Circuit's decision in Retsieg Corp. v. ARCO Petroleum Prods., 870 F.2d 1495 (9th Cir. 1988), as reflecting a proper standard. There, the Ninth Circuit said that to be willful the dealer's act must be done "either with an intentional disregard of, or plain indifference to, the requirements of the franchise agreement." Id. at 1498. This appears to us to be a plausible gloss of the statute and, in the absence of any developed argument for a different legal standard, we follow this aspect of Retsieg in this case.
 
 
 6
 There is no reason to describe the somewhat unusual events surrounding the diversion of the gasoline to Aoude's Mobil station because the district court rested its judgment of willfulness on events occurring after the delivery. The district court determined that Aoude was given notice on February 6 that he likely had received a delivery of non-Mobil gas; that this was confirmed by his own measurements on February 7; and that his failure either to halt sales or make a serious investigation of the matter amounted to plain indifference to his obligation to avoid the sale of misbranded gasoline.
 
 
 7
 What the record shows is that on February 6 Mobil was tipped off by a telephone call from an Aoude competitor (located across the street from Aoude's station) that a delivery had been made to Aoude Mobil from a non-Mobil tank truck. Representatives from Mobil visited Aoude later that same day and told him that they had information indicating that he had received the improper delivery. Although Aoude offered some evidence that he had told an employee to make some inquiries that same day, he did little to investigate the matter seriously or to halt sales when, on the following day, his own measurements confirmed that a significant amount of unaccounted for gasoline was contained in his station tank. He could easily have investigated since he knew the name of the company that had dispatched the tanker and apparently knew that it had made its main delivery at his own non-Mobil station down the road.
 
 
 8
 Although Aoude says that willfulness is not normally a matter to be resolved on summary judgment, we have no difficulty concluding that his objective behavior from February 7 onward-given what he was admittedly told by the Mobil representatives and what he learned from his own measurements-constituted plain indifference to his obligations. Aoude further objects that the Mobil representatives told him only that non-Mobil gasoline "may" have been deposited in his tank; but Aoude was also told by his own employee that the non-Mobil truck had been at his station, and his own measurements on the following day confirmed that such a delivery had occurred.
 
 
 9
 Under these circumstances, we need not rely upon other evidence suggesting that Aoude had earlier engaged in selling non-Mobil gasoline from the same Mobil station. Accordingly, there is no need to resolve the question raised by Aoude whether such evidence was presented to the district court in an admissible form and whether any such objection to admissibility has been waived.
 
 
 10
 Affirmed.
 
 
 
 [1]
 Given the uncontradicted testimony that the gasoline was deposited in Aoude's tank, we do not think that a material factual dispute is created by some confusion as to which of Aoude's several tanks was thus filled. Aoude has offered nothing else to contradict the driver's testimony