**Richard TOLBERT, Plaintiff,**

v.

**Harold W. CLARKE, Peter Pepe, and John Doe, Defendants.**

**Civil Action No. 09–10680–WGY.**

United States District Court, D. Massachusetts.

Feb. 22, 2010.

---

Charles W. Anderson, Jr., Department of Correction, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I.  Introduction

The plaintiff, Richard Tolbert ("Tolbert"), is incarcerated at MCI–Concord, a prison within the Commonwealth of Massachusetts. The defendants, Commissioner Harold Clarke ("Clarke") and Superintendent Peter Pepe ("Pepe"), are named in their individual and official capacities as Commissioners of the Massachusetts Department of Correction and MCI–Concord, respectively, responsible for the "care and custody of all inmates." Mem. in Supp. of Defs.' Mot. for Summ. J. 1 [Doc. 41] (quoting Am. Compl. 2 [Doc. 16]). "John Doe" is the kitchen steward at MCI–Concord. Am. Compl. 2.

Clarke and Pepe move for summary judgement on the grounds that Tolbert has not exhausted his administrative remedies, and that they, in their individual capacities, are subject to qualified immunity. Clarke and Pepe also assert that Tolbert has "not stated a valid claim." Defs.' Supp. Mem. 2.

### II.  Background

Tolbert alleges numerous claims for relief. His first claim is for racial discrimination. He "challenges and alleges" segregation in cell assignments and double-bunking, Am. Compl. ¶ 1, as well as discrimination in job assignments within the prison. See Am. Compl. ¶¶ 2, 13, 20. He also alleges racial insults by staff and retaliatory harassment to "be the norm." Am. Compl. ¶ 14.

Tolbert also claims equal protection violations, alleging that that some prisoners have access to newspapers and magazines while others do not, Am. Compl. ¶ 12, and that the use of a toilet brush is denied to prisoners in his building, but not to prisoners in other buildings, Am. Compl. ¶ 19.

Tolbert claims violations under the Eighth Amendment of the U.S. Constitution. First, he alleges that the conditions in the cells, particularly that multiple inmates are assigned to small units designed for one person and that cells lack fire sprinklers and adequate ventilation systems, constitute cruel and unusual punishment. See Am. Compl. ¶¶ 3, 6, 15. Second, Tolbert challenges unsanitary conditions in the kitchen, alleging uncovered food, dishwater in lunch trays, inadequate sanitation policies, and insect and

rodent infestation. *See* Am. Compl. ¶¶ 8–11.

Further, Tolbert challenges various practices in the prison, including the placement of pre-trial detainees in the same cells as those serving a sentence, the "selective enforcement" of prison rules and regulations, the prison officials' failure to respond to administrative complaints, and the practice of prohibiting inmates from taking commissary items with them when transferring facilities. Am. Compl. ¶¶ 5, 7, 16, 18.

Finally, Tolbert claims that his security classification as a prisoner violates the United States Constitution insofar as it subjects him to double jeopardy. Specifically, he challenges his classification to the extent that it is based on his conduct while he was a pre-trial detainee. U.S. Const. amend. V; Am. Compl. ¶¶ 4, 17, 18.

Tolbert does not specify particular instances or any time-frame for his allegations, but rather claims that these conditions are ongoing. In support, he provides letters that he has received in response to communications with the defendants and other administrative agencies. Such letters include: a letter Tolbert received on April 30, 2009, from the United States Commission on Civil Rights stating that the Commission did not have jurisdiction over his unspecified claim, and that it had forwarded Tolbert's complaint to the United States Department of Justice, Pl.'s Opp'n Mot. [Doc. 42], Ex. A at 11; a letter from the Massachusetts Department of Health discussing Tolbert's concerns regarding fire protection systems, but stating that such issues were within the jurisdiction of the Department of Public Safety and should be directed to that office, Pl.'s Opp'n Mot., Ex. A at 16; a letter Tolbert filed requesting an appeal of his classification and a reply dated April 3, 2009, from the Communication Unit Manager at MCI–Concord, informing Tolbert of the formal procedure for appealing classification decisions, Compl., Ex. A.

Tolbert also provides the Court with a document labeled "administrative complaint" describing conditions in the kitchen, which Pepe's office received on October 8, 2009, Pl.'s Opp'n Mot., Unnumbered Ex, as well as a grievance form Tolbert filled out, dated May 25, 2009, Pl.'s Opp'n Mot., Ex. A at 1. Tolbert further submits ten reply letters from several prison administrators regarding other concerns raised in this action, seven of which are from Pepe. The letters span from March 30, 2009 to October 14, 2009. They raise concerns alleged in this complaint, including racial segregation in jobs and housing, overcrowding, kitchen conditions (one apparently in reply to Tolbert's administrative complaint noted above), fire safety, and disciplinary concerns. *See* Pl.'s Opp'n Mot., Ex. A.

## III. Standard for Summary Judgment Analysis

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In determining if an issue of fact is "genuine," the Court examines whether there exists a sufficient evidentiary basis on which the trier of fact could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it will affect the outcome of the case under the applicable law. *Id.* The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must construe the evidence "in the light most favorable to the nonmoving party, and draw[ ] all reason-

able inferences in its favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## IV. Exhaustion of Administrative Remedies

Clarke and Pepe argue that Tolbert's claims should fail on the ground that he did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e.

Section 1997e, better known as the "Prison Litigation Reform Act," requires dismissal of an action brought by a prisoner if he or she has not yet exhausted all remedies available within the prison system. *Woodford v. Ngo,* 548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." (internal citations omitted)); *Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir.2002) (*"Casanova I"*) ("Although not jurisdictional, the exhaustion requirement is nonetheless mandatory." (internal citations omitted)). A prisoner must comply with this requirement before initiating the suit. *Medina–Claudio v. Rodriguez–Mateo,* 292 F.3d 31, 35–36 (1st Cir.2002) (rejecting appellant's argument that the case should be continued until administrative remedies are exhausted). The exhaustion requirement applies to Tolbert's claims, as they relate to prison conditions. *Woodford,* 548 U.S. at 85, 126 S.Ct. 2378 ("[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under [42 U.S.C.] § 1983.").

In determining whether Tolbert has complied with the exhaustion requirement, this Court will look to the time that the action was filed. *See Medina–Claudio,* 292 F.3d at 36 ("[The language in 42 U.S.C. § 1997e(a) ] clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement."); *see also Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir.2003) ("Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred.")[1].

The grievance procedure in effect at that time was, and still appears to be, the procedure contained in 103 C.M.R. 491.00 *et seq. See* Defs.' Mot. to Dismiss or Summ. J. [Doc. 40] 4; Defs.' Mot. to Dismiss or Summ. J., Ex. A ("Goguen Aff.") at ¶ 2; Pl.'s Opp'n Mot. 1. Tolbert has not alleged explicitly that he followed this procedure or filed grievances in accordance with it, except with respect to one issue. The informal letters Tolbert sent to Pepe, various officials within the prison system, and other Massachusetts agencies do not comply with this procedure, but rather bypass it.

Tolbert argues that the prison officials, including these defendants, ignored his grievances and failed to follow proper procedure by refusing to acknowledge receipt. Pl.'s Opp'n Mot. 1–2. In support, Tolbert provides an affidavit, signed by him and two other prisoners, stating that "I filed grievances here at MCI Concord only to [be] ignored" and further stating that this

---

1. Actually, *Johnson* did not reverse the district court's denial of the motion to dismiss due to failure to exhaust as the plaintiffs had since the start of the case, exhausted their remedies. Rather, the *Johnson* court reversed on the grounds of conserving judicial resources (presumably, dismissal would have been without prejudice and would have simply resulted in a refiling of the same action). The *Johnson* court did state, however, that "should the district court be faced with identical circumstances in the future, dismissal is *required* under section 1997e(a)." 340 F.3d at 628 (emphasis added).

was an "ongoing practice." Pl.'s Opp'n Mot., Ex. A at 12. Moreover, Tolbert asserts that "these defendants have also designed a practice in which they are not going by policie [sic] and that they are circumventing the process by not issuing any receipts for the grievances in which they received, so that they can ... falsely claim they never received any grievance form." Pl.'s Opp'n Mot. 1–2. The policy to which Tolbert refers requires the Institutional Grievance Coordinator upon receiving a completed grievance to "acknowledge receipt of the grievance form through a written notification to the inmate." 103 C.M.R. 491.10(1)(A). This allegation raises a question as to whether Tolbert actually filed grievances, but was not given receipts that he otherwise could have used to prove his filings.

Tolbert alleges that he filed a grievance on the issue of racial segregation in housing. Pl.'s Opp'n Mot. 3. He further implies that he has filed other grievances:

> [T]his honorable court in conducting its review should pose the rhetorical question if the plaintiff went through the trouble to send letters of complaint to the GOV Patrick, plus the u.s. commission on civil rights along withe the commissioner and the superintendent would it not stand to reason that i filed numerous GRIEVANCE FORMS ... AND THAT THES DEFENDANTS JUSTN GOT CAUGHT.

Pl.'s Opp'n Mot. 4 (ellipsis in original). Tolbert does not, however, go into further detail about those grievances, such as when they were filed or whether he appealed therefrom.

Tolbert does provide one example of a grievance form that he has submitted. The example he provides, however, appears neither to comply with the requirements of 103 C.M.R. 491.09(2) nor to have ever been filed. The grievance is dated after the commencement of this action. Pl.'s Opp'n Mot., Ex. A; *see also* Defs.' Opp'n to Pl's Mot. to Strike Aff. of Rachel Goguen [Doc. 45], Ex. A at ¶¶ 4–5 (describing how the form as entered is noncompliant with grievance procedures).

The pro se plaintiff's pleadings and documents should be construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (reaffirming this principle from *Haines* ); *see also Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir.1997) ("However, pro se status does not insulate a party from complying with procedural and substantive law ... [t]he policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." (internal citations omitted)). Thus, Tolbert's assertions can be treated as a claim that administrative remedies were not available, and that the exhaustion requirement therefore has been satisfied. 42 U.S.C. § 1997e(a) ("No action shall be brought ... until such administrative remedies *as are available* are exhausted." (emphasis added)); *see Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir.2006) ("If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust.").

■ The exhaustion requirement functions as an affirmative defense, thus placing the burden of showing non-exhaustion on the defendants. *Casanova v. Dubois,* No. 98–cv–11277, 2002 WL 1613715, at *2 (D.Mass. July 22, 2002) ("*Casanova II* ") (Stearns, J.) ("[T]he PLRA's exhaustion requirement is an affirmative defense ... as a result, a defendant bears the burden of establishing non-exhaustion."); *Casanova v. Dubois,* 304 F.3d 75, 78 n. 3 (1st Cir.2002) ("*Casanova III* ") ("[T]he district

court [in *Casanova II*] properly noted ... that the vast majority of circuit courts have characterized P.L.R.A. exhaustion as an affirmative defense ... we adopt the majority rule." (internal citations omitted)); *Jones v. Bock,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (affirming the First and other Circuits' conclusion that exhaustion is an affirmative defense).

To shoulder their burden, Clarke and Pepe provide affidavits of the Institutional Grievance Coordinator at MCI–Concord, Rachel Goguen, stating that no grievances were received from Tolbert on these issues. Defs.' Mot. to Dismiss or Summ. J., Ex. A at ¶ 4 ("I have found that Mr. Tolbert has not filed any grievances concerning his conditions of confinement."); Defs' Opp'n to Pl.'s Mot. to Strike Aff. of Rachel Goguen, Ex. A at ¶ 3. Tolbert disputes the validity of these affidavits. Pl.'s Opp'n Mot. 2 (referring to the Goguen Affidavits as the "perjured affidavits"); Pl.'s Mot. for Reconsideration to Strike Fraudulent Aff.

The question here is whether Tolbert has presented sufficient evidence to raise a genuine issue of material fact rebutting Clarke and Pepe's evidence. Merely providing "a conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' is insufficient to discharge the nonmovant's burden." *Iverson v. City Of Boston,* 452 F.3d 94, 98 (1st Cir.2006) (quoting *DePoutot v. Raffaelly,* 424 F.3d 112, 117 (1st Cir.2005)); *see Meuser v. Federal Express Corp.,* 564 F.3d 507, 515 (1st Cir.2009) ("Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.'" (quoting *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991))); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) ("Even in cases

where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

Tolbert does not directly allege that he has filed grievances on every issue. Instead, he asks this Court to infer that he has. Only for the issue of racial discrimination in housing does Tolbert allege that he filed a grievance, without any evidence of subsequently following the appeals process. While the Court will draw all justifiable inferences in Tolbert's favor, it is a stretch to infer that Tolbert filed grievances on all these issues, simply based upon his almost speculative assertions. Even if this Court assumed that Tolbert properly filed grievances, he has neither alleged nor filed any evidence that when no action was taken on his grievances, he followed or attempted to follow the appeals procedure of 103 C.M.R. 491.12. Thus, Tolbert has not alleged that he exhausted his remedies. To infer that he has, based on the fact that he sent letters to various government agencies and officials, would be an exercise in speculation. *See, e.g., Vineberg v. Bissonnette,* 548 F.3d 50, 56 (1st Cir.2008) ("[T]he nonmovant ... still must demonstrate, 'through submissions of evidentiary quality, that a trialworthy issue persists.'" (quoting *Iverson,* 452 F.3d at 98)); *Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.,* 405 F.3d 36, 39 (1st Cir.2005) ("[P]arty must respond to a properly supported motion with sufficient evidence to allow a reasonable jury to find in its favor 'with respect to each issue on which [it] has the burden of proof.'" (brackets in original) (citing *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997))); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994) ("[M]otions for summary judgment must be decided on

the record as it stands, not on litigants' visions of what the facts might someday reveal.").

Tolbert's other assertion that officials at MCI–Concord ignored his grievances is not mentioned here. There is no futility exception to the exhaustion requirement. *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Thus, Tolbert's arguments that Clarke, Pepe, and other officials within the Massachusetts prison system would have ignored his grievances do not justify his lack of filing. Tolbert does not argue that he was told that he could not file grievances on these issues, or that the procedure does not apply to such grievances. The exhaustion requirement remains regardless of whether the defendants or prison officials actually would have resolved or even paid attention to these grievances before initiation of this suit. *See Woodford*, 548 U.S. at 87–91, 126 S.Ct. 2378 (discussing generally the policy rationale behind administrative exhaustion requirements).

## V. Qualified Immunity

In light of the foregoing, the issue of whether Clarke and Pepe are eligible for qualified immunity need not be reached.

## VI. Conclusion

The defendants' motion for summary judgement [Doc. 40] is thus granted, not on the merits but due to the failure to exhaust administrative remedies. This dismissal is without prejudice to renewal of such claims upon proper exhaustion. The claims with respect to John Doe are dismissed due to the failure to make service within 120 days pursuant to Federal Rule of Civil Procedure 4(m).

SO ORDERED.