Curran, Dennis J., J.
INTRODUCTION
This action arises out of the tragic death of James F. Davison, III, which occurred while he was in the custody of the Middlesex Sheriffs Office. Sean Deady, as personal representative of Mr. Davison’s estate, has filed claims against Middlesex County, Sheriff Peter Koutoujian, and three corrections officers, alleging that the defendants violated Mr. Davison’s constitutional rights and are tort-liable for their failure to provide him adequate medical care.
Sheriff Koutoujian now moves, under Mass.R. Civ.P. 12(b)(6), to dismiss Mr. Deady’s claims against him, individually and in his official capacity. For the following reasons, his motion to dismiss must be ALLOWED.
BACKGROUND
Mr. Deady’s amended complaint sets forth the following allegations.
Mr. Davison was incarcerated at the Middlesex County Jail on September 2,2011, under an order of the Somerville District Court for violating conditions of his probation. He suffered from drug dependency as well as many other serious health issues. On September 22, 2011, while he was being transported to the hospital wing at Billerica House of Correction, Mr. Davison went into cardiac arrest. When he asked for assistance, the corrections officers ignored his cries for help, and ignored the cries from other inmates who witnessed his distress. Instead, they brought him to the correctional faciliiy in Concord, and then contacted emergency medical services. Ambulance personnel transported Mr. Davison to the Concord Hospital, where he died the next day.
Mr. Deady alleges that Mr. Davison died as a result of the poor medical care he received from the defendants. He asserts one cause of action against each defendant under 42 U.S.C. §1983 for violating Mr. Davison’s constitutional rights, and three claims against each under the Massachusetts Tort Claims Act, G.L.c. 258; one claim in negligence for damages occurring before Mr. Davison’s death; one claim for negligent and intentional infliction of emotional distress before Mr. Davison’s death; and one claim for negligently and intentionally causing the death of Mr. Davison.
The motion before me addresses only the claims lodged against Peter Koutoujian, individually and officially.
DISCUSSION
I. The Standard of Review
To survive a motion to dismiss under Mass.R.Civ.P. 12(b)(6), a complaint must set out factual allegations that “raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). In other words, the plaintiffs factual allegations and the reasonable inferences drawn therefrom must “plausibly suggest! ] ... an entitlement to relief." Iannacchino, 451 Mass. at 636. The plaintiff must plead the grounds of his entitlement to relief with “more than labels and conclusions,” id.-, the court will not accept “legal conclusions cast in the form of factual allegations.” Id. at 633, quoting Schaer v. Brandeis Univ., 434 Mass. 474, 477 (2000).
II. ANALYSIS
A. Count I — 42 U.S.C. §1983
To state a claim under 42 U.S.C. §1983, a plaintiff “must allege that some person has deprived him of a federal right” and that such person “acted under color of state or territorial law.” Gomez v. Toledo, 446 U.S. 635, 640 (1980). Mr. Deady’s amended complaint, fairly read, asserts a claim of supervisory liability under §1983.
Supervisory liability under this federal statute arises if a supervisor directly participates in a rights-violating incident, or if the official “supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task may con *704 tribute to a civil rights deprivation.” Sanchez v. Pereira-Castillo, 590 F. 3d 31, 49 (1st Cir. 2009), quoting Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Liability cannot be imposed under section 1983 on a theory of respondeat superior. Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir 2014). To prove supervisory liability in a §1983 action, “the plaintiff. . . must show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation.” Sanchez, 590 F.3d at 49, quoting Zapata, 175 F.3d at 44 (internal quotes and citation omitted). “(M]ere cause-in-fact does not suffice to establish the required affirmative link. If that were the test . . . every §1983 claimant harmed by such employee conduct could point to something the supervisor could have done to prevent the unfortunate incident.” Clancy v. McCabe, 441 Mass. 311, 321 (2004), quoting Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997) (additional quotes omitted).
Mr. Deady alleges that “[d]efendant Koutoujian directly participated” in the deprivation of Mr. Davison’s legal right to proper medical care, by “choosing to ignore the deprivation of proper medical care by persons whom he supervised, trained, [and] controlled.” Amended Complaint at 15. He contends that “Koutouj-ian directly participated in the deprivation of these rights in the manner that he disciplined his subordinates who worked at the Middlesex Counly Jail, and when he established the policies, practices, and customs of the prison system in Middlesex County. Sheriff Koutoujian either directly participated in, or through his conduct condoned or tacitly authorized employees of the Middlesex County Jail to violate [Mr. Davison’s] rights.” Id. He asserts that Mr. Davison’s rights to proper medical care were violated because “there were not adequate medical resources available at the Middle-sex County Jail to properly treat” the detainee’s medical condition, and that “there were not proper procedures in place to transfer [Mr. Davison] to another facility where his medical condition could receive proper treatment.” Id. at 16. Mr. Deady alleges that Mr. Koutoujian “had the power and authority to determine the level of medical resources available to [Mr. Davison], and purposely chose to provide substandard levels of care.” Id.
Notwithstanding these accusations, the amended complaint fails to sufficiently suggest an affirmative link between Mr. Koutoujian and the alleged violations of Mr. Davison’s right to proper medical care. No specific facts are pled to support his assertions that Mr. Koutoujian condoned or tacitly authorized his subordinates’ rights-violating behavior, or that he directly participated in violating Mr. Davison’s rights; his allegations do “little more than assert [ ] legal conclusion[s]” about Mr. Koutoujian’s involvement in any underlying constitutional violations. Sanchez, 590 F.3d at 49. Similarly, Mr. Deady’s argument that Mr. Koutoujian bears responsibility for the violations of Mr. Davison’s rights because they were the result of policies that Mr. Koutoujian established lacks factual support. “[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor’s policy or custom, or otherwise to show deliberate indifference.” Canales v. Gatzunis, 979 F.Sup.2d 164, 172 (D.Mass. 2013), citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). “The deliberate indifference required to establish a supervisory liability. .. claim cannot plausibly be inferred from the mere existence of a poorly-implemented . . . policy and a bald assertion that the [violation] somehow resulted” from such policy. Sanchez, 590 F.3d at 49-50. Akin to the assertions at issue in Sanchez, Mr. Deady’s allegations are “precisely the type of ‘the-defendant-unlawfully-harmed-me’ allegation[s] that the Supreme Court has determined should not be given credence when standing alone.” Id., citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
Mr. Deady’s well-written opposition memorandum states that he has “ample evidence ... that the system did not work to provide proper medical care to Davi-son,” and that he deserves to conduct discovery to “inquire into the reasons for this failure.” Opposition at 7. He entreats, “[l]et’s start at the top, with Koutouj-ian, and work our way down to the drivers who would not stop to bring Davison to the hospital when he was in the process of dying.” Id. Such a goal, though laudable in the abstract, cannot withstand pleading requirements. Speculation that misconduct may have occurred high in the chain of command, without any real factual support, is insufficient to state a claim for supervisory liability under §1983. To the extent that Count I implicates Mr. Koutoujian, it must be dismissed.
B. Count II — The Massachusetts Tort Claims Act, G.L.c. 258
Mr. Deady further seeks relief against Mr. Koutouj-ian under the Massachusetts Tort Claims Act. In relevant part, that Act provides:
Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee or his estate whose negligent or wrongful act or omission gave rise to such claim, and no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment; provided, however, that a public employee shall provide reasonable cooperation to the public employer in the defense of any action brought under this chapter.
G.L.c. 258, §2 (emphasis added). The Act defines a “public employer” as “the commonwealth and any county, city, town ... or any department, office, com *705 mission, committee, council, board, division, bureau, institution, agency or authority thereof'. . . which exercises direction and control over the public employee ...” G.L.c. 258, §1. “Public employee” is defined to include “elected or appointed, officers or employees of any public employer ...” Id.
Employed by Middlesex County, Peter Koutoujian is a public employee. See Pruner v. Clerk of the Superior Court in the County of Norfolk, 382 Mass. 309, 314-15 (1981) (reasoning that, as an individual and officer, rather than a political subdivision or other governmental entity, the Clerk of Norfolk County was readily classifiable as a public employee, rather than a public employer, despite the fact that “(o]ne could argue . . . that the word ‘office’ in the definition of public employer includes the office of the clerk of Norfolk County”). Under G.L.c. 258, §2, Mr. Koutoujian is exempt from liability under the Act.[1] To the extent that Count II implicates Mr. Koutoujian, that allegation in the amended complaint must be dismissed.
ORDER
For these reasons, Sheriff (and Mr.) Koutoujian’s motion to dismiss is ALLOWED. Counts I and II of Mr. Deady’s complaint as against him in each capacity, shall be dismissed forthwith.

 Section 10(c) of the Act exempts public employers from liability for the intentional acts of their employees. See G.L.c. 258, §10(c). In his opposition memorandum, Mr. Deady argues that his complaint alleges that Mr. Koutoupan demonstrated a deliberate indifference to Mr. Davison’s medical needs and intentionally inflicted emotional distress upon him, and that Mr. Koutoujian may be held personally liable under the Act for these intentional acts. These allegations are conclusoiy and do not meet the standard required to survive a motion to dismiss. Mr. Deady’s argument is, unfortunately, unavailing.