160 F.Supp.2d 204 (2001)
Rafael RODRIGUEZ-VAZQUEZ, Plaintiff,
v.
Carlos J. CINTRON-RODRIGUEZ, et al., Defendants.
No. 00-1217(SEC).
United States District Court, D. Puerto Rico.
August 23, 2001.
*205 *206 Eduardo M. Joglar, San Juan, PR, for Plaintiffs.
Laura Belendez-Ferrero, Arlington, VA, for Defendants.

OPINION AND ORDER
CASELLAS, District Judge.
Pending before the Court is co-defendant Pedro Toledo-Dávila's "Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure." (Docket # 16). Plaintiff filed an opposition to this motion. (Docket # 23). For the reasons stated below, Defendant's motion to dismiss is GRANTED and partial judgment shall be entered accordingly.

I. Background
This case was filed on February 18, 2000. (Dkt.# 1). It is a civil rights action for money damages filed by Plaintiff, Rafael Rodríguez-Vázquez ("Rodríguez"), against several officers from the Puerto Rico Police Department arising from an arrest without probable cause and beating. Plaintiff claims that on the night of November 6, 1996, after a general election in Puerto Rico, he was standing on a street corner next to the establishment Chicoman Pizza, on Muñoz-Rivera Street in Patillas, Puerto Rico, when some individuals  their identity unknown to Plaintiff  shouted to some police agents who were on duty at that time. (Dkt. # 1 ¶¶ 14-5). In response, Puerto Rico Police Agent Carlos J. Cintrón-Rodríguez ("Cintrón"), a co-defendant in this case, allegedly approached Plaintiff and insulted him telling him that he would "get [him] some other time." (Id. ¶ 15).
A few days thereafter, on November 10, 1996 at 8:30 p.m., while Plaintiff was exiting a grocery store in Patillas, he noticed that an unmarked blue Ford Explorer with dark tinted glasses arrived at the place and parked. Three police agents, wearing civil clothes, got out of the Ford Explorer *207 and "without any legal reason whatsoever, order [sic] plaintiff and other people who were there to put their hands over the vehicle." (Id. at ¶ 16). Plaintiff alleged that co-defendant Cintrón was there and that, using obscene language, he told Plaintiff: "Remember that I told you I was going to get you, well I got you ..." (Id.). Cintrón then told Plaintiff that he was under arrest and proceeded to handcuff him. After Rodríguez was handcuffed, Cintrón allegedly hit him in the face throwing him against an ice machine. Plaintiff's shirt was ripped in that throw. (Id. at ¶ 17).
Further, Plaintiff alleged that Cintrón and the other police officers  also co-defendants in this case  pushed and beat him up until he entered the Ford Explorer. Once in the Ford Explorer he was again hit in the face after he asked the police officers to loosen the handcuffs. (Id. at ¶ 16-7). Cintrón and the other police officers then took Rodríguez to the distant Guayama police station, so that he would have difficulty returning home. (Id. at ¶ 18).
Once in the police station, Cintrón again threatened Plaintiff and gave him "a citation for November 20, 1996." (Id. at ¶ 19). Cintrón warned Rodríguez that depending on how Rodríguez dealt with the "situation"  meaning the beating and false arrest  he might consider "giving him an opportunity." (Id.). At that point, Plaintiff asked what the arrest was for and he was told that it was the result of the alleged incident on election day. (Id. at ¶ 20). Plaintiff's mother finally arrived at the station and picked him up, taking him to the hospital the following morning. (Id. at ¶ 22).
Defendant Toledo is joined in this action because he was the Chief of the Puerto Rico Police Department at the time. The only allegations against him in the complaint are that "under color of law, he was ultimately responsible for the selection and/or supervision and/or training and/or discipline of his subordinates, defendants herein." (Id. at ¶ 4). In addition, Plaintiff alleged that:
[P]rior Superintendents of the Police Department which defendant Toledo followed and/or codefendant Toledo himself established policies and procedures under which the Police Department employed personnel inadequately trained, supervised and disciplined to safely and properly carry out the functions assigned to them. Said defendant personally reviewed and adjudicated one and/or some and/or all of the administrative complaints made by citizens and police officials incurring in police misconduct. Therefore, defendant Toledo knew or should have known that there existed numerous incidents of abuse of police power and/or the acts and/or omissions as described in this complaint. Despite the aforementioned, defendant Toledo knowingly failed to implement reasonable or adequate policies, procedures and guidelines in accord with minimum professional standards to avoid and/or minimize the illegal police misconduct set forth in this complaint. Defendant Toledo failed to take any action to correct these dangerous deficiencies.
(Id. at ¶ 28).
Finally, Plaintiff claims that:
All of the aforementioned acts and/or omissions, at all times under color of law ... by ... Toledo ... as set forth in the preceding paragraphs, not only displayed a patent use of excessive force and/or abuse of the police power vested in them by the Commonwealth of Puerto Rico when ... [co]defendants beat, falsely arrested and maliciously persecuted plaintiff Rodriguez-Vazquez, but also, their grossly negligent acts and/or *208 omissions amounted to a deliberate indifference to the constitutional rights, privileges and immunities guaranteed to Plaintiff under the United States Constitution and its laws ... (Id. at ¶ 29.)
The aforementioned joint or individual acts and/or omissions by ... Toledo ... as set forth in the preceding paragraphs were the direct, legal and proximate cause of the violation of Plaintiffs constitutional and legal rights and the damages herein claimed and therefore, defendants herein sued must respond to Plaintiff, individually, severally and jointly. (Id. at ¶ 30).
On November 21, 2000, co-defendant Toledo moved to dismiss the complaint against him on grounds that it fails to plead a cause of action against him upon which relief can be granted. (Dkt.# 16). In particular, Toledo argues that Plaintiff failed to satisfy the strict pleading requirements for a civil rights action under 42 U.S.C. § 1983. In addition, Toledo argues that Plaintiff failed to sufficiently plead a causal connection between the acts allegedly committed by the co-defendants and Toledo's acts or omissions. In addition, he argued that he is not liable under a theory of respondeat superior. Finally, he raises the defense of qualified immunity and requests that both the federal and commonwealth causes of action against him be dismissed.
On January 1, 2001, Plaintiff filed an opposition to Toledo's motion to dismiss. (Dkt.# 23). Plaintiff's opposition argues that the pleadings are sufficient to establish a claim against Toledo for "failure to train" and that no heightened pleading standard should be applied.

II. Legal Analysis

A. Motion to Dismiss Standard  Civil Rights Violations
In the past, when civil rights were concerned, courts had required strict pleading standards consisting of specific factual allegations showing a deprivation of federal rights under color of state law. Moreover, vague and conclusory assertions have been rejected as insufficient to establish a claim. The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989) ("[P]laintiffs are obliged to set forth in their complaint factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory. The need is perhaps greater where allegations of civil rights violations lie at the suit's core ... to avoid tarring defendants' reputations unfairly and to prevent potential abuses, we have consistently required plaintiffs to outline facts sufficient to convey specific instances of unlawful discrimination."), Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982) (plaintiff must allege "minimal facts, not subjective characterizations, as to who did what to whom and why"); See also Boykins v. Ambridge Area School District, 621 F.2d 75, 80 (3rd Cir.1980), Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3rd Cir.1978) ("plaintiff must state the conduct violating his civil rights, when and where the conduct occurred, and who was responsible."). However, in Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected the application of the "heightened pleading standard" to civil rights actions. The Leatherman Court stated that "it is impossible to square the `heightened pleading standard' ... with the liberal system of `notice pleading' set up by the Federal Rules."[1]Id. at 169, 113 *209 S.Ct. 1160. Therefore, pursuant to Leatherman, the complaint will be examined under the general motion to dismiss standard used for Fed.R.Civ.P. 12(b)(6).
This rule establishes that dismissal of a claim is appropriate "for failure of the pleading to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In making this determination, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), quoted in Davis v. Monroe County Bd. of Education, 526 U.S. 629, 652-54, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999), see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").
However, this pleading requirement "is not entirely a toothless tiger." Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir.1996). In order to survive a motion to dismiss, "a complaint must set forth `factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir.1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988)). In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and `bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle, 142 F.3d at 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)). See also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir.1993).

B. Elements of a Claim Under 42 U.S.C. § 1983
In order to state a valid claim under 42 U.S.C. § 1983 Plaintiff must allege and prove the following elements:
(1) that the conduct complained of was committed by a person acting "under color of state law." See Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980);
(2) that this conduct "deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." See Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled *210 in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir.1985); and
(3) that the defendant was personally and directly involved in causing the violation of the plaintiff's federally protected rights. Voutour, 761 F.2d at 819. This third element requires a showing of a causal connection between the specific defendant and plaintiff's federal rights deprivation. See Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir.1988). This may consist of direct acts by the defendant, certain acts performed at defendant's direction, or knowledge and consent. Each defendant individually responds for his own acts and omissions in the light of his own duties. See Rizzo v. Goode, 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
In this case, Plaintiff's general allegations are insufficient to state a claim against Toledo. Although the complaint specifically states that Toledo's acts or omissions, if they occurred, were performed under color of state law; the rest of the allegations are non-specific and generalized to the extent that they cannot withstand a motion to dismiss. In particular, Plaintiff's complaint is deficient in establishing causation. On this key issue, Plaintiff has only made a generalized and conclusory statement to the effect that: "The aforementioned joint or individual acts and/or omissions by one and/or some and/or all of the defendants ... [including] Toledo ... as set forth in the preceding paragraphs were the direct, legal and proximate cause of the violation of Plaintiffs [sic] constitutional and legal rights and the damages herein claimed." (Id. at ¶ 30).
Since this is a legal conclusion the Court is not bound to take at face value. See Doyle v. Hasbro, Inc., 103 F.3d at 190 ("In order to survive a motion to dismiss, plaintiffs must set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery. Although all inferences must be made in the plaintiffs' favor, this court need not accept bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.") (internal citations and quotation marks omitted). Instead, the Court is required to examine the factual averments of the complaint to determine whether the element of causation can be inferentially drawn from them. For the reasons stated below, the Court finds that causation is lacking.

C. Supervisory Liability
Plaintiff alleges that Toledo is liable because "he was ultimately responsible for the selection and/or supervision and/or training and/or discipline of his subordinates, defendants herein." (Dkt. 1 at ¶ 4). This allegation by itself does not give rise to a cause of action against Toledo for supervisory liability. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (establishing that supervisory personnel liability in Section 1983 cases cannot be established under a theory of respondeat superior), Monell, 436 U.S. at 691, 98 S.Ct. 2018, Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir.1989). Indeed, since there is no respondeat superior liability under Section 1983, the basis for imposing Section 1983 liability is the concept of causation and fault by a particular defendant. See Monell, supra; City of Oklahoma v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), Voutour, 761 F.2d at 819. The Supreme Court has declined *211 to find such causation where liability is imposed purely as a result of the employment relationship. Tuttle, 471 U.S. at 818, 105 S.Ct. 2427.
Therefore, a supervisor "may be found liable only on the basis of his own acts or omissions". Gutierrez-Rodriguez, 882 F.2d at 562 (quoting Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989)), Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir.1996) and Guzman v. City of Cranston, 812 F.2d 24, 26 (1st Cir.1987). In addition, the First Circuit requires Plaintiff to show that the supervisor's "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others" Vance, 868 F.2d. at 17-18, Gaudreault v. Municipality of Salem, 923 F.2d 203, 209 (1st Cir.1990), cert. denied, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991); and "there must be an `affirmative link' between the street level misconduct and the action or inaction of supervisory officials." Gutierrez-Rodriguez, 882 F.2d at 563.
Indeed, it is very important that the Plaintiff "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir.1994). And although it is not required that the plaintiff establish the supervisor's direct participation in the wrongful conduct, it is required that the supervisor had "overtly or tacitly approved of, or purposely disregarded the conduct." Id. (citing Larez v. Los Angeles, 946 F.2d 630, 646 (9th Cir.1991); Lipsett v. University of Puerto Rico, 864 F.2d 881, 902-03 (1st Cir.1988)). In this regard, "[a]n important factor in determining whether a supervisor is liable to the extent he has encouraged, condoned, acquired, or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens." Febus-Rodriguez, 14 F.3d at 93, (citing Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)).
Another possibility is to allege and establish a widespread violation of the citizens' civil rights of the kind that is "sufficient to alert a supervisor to ongoing violations." Maldonado-Denis, 23 F.3d at 582. However, in this case only gross negligence on the supervisor's part, which is causally linked to the violations can serve as a basis for supervisory liability. Id. And "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Id. at 583.
Therefore, in order to meet the established Section 1983 requirements, Plaintiff must either allege that Toledo himself was personally involved and responsible for the alleged deprivation of Plaintiff's constitutional rights. Otherwise, he has to establish that Toledo's involvement consisted of an encouragement, condonation, or deliberate indifference to actions by his subordinates of which he had knowledge and which were under his control. Adorno Colon v. Toledo Davila, 137 F.Supp.2d 39, 42 (D.P.R.2001) ("A key factor in determining whether a supervisor is liable is what knowledge the supervisor had regarding the subordinate's behavior.") (internal quotations marks and citations omitted). And to establish the causation requirement, he has to prove that there was "an affirmative link" between the "street level misconduct and the action or inaction of supervisory officials." Gutierrez-Rodriguez, 882 F.2d at 563. The third alternative is to establish a widespread violation of civil rights which put him on notice of the wrongful conduct and that he incurred in gross negligence when dealing *212 with the situation. The causal link also has to be satisfied. Maldonado-Denis, 23 F.3d at 582-3.
In this case, Plaintiff's factual allegations are poor and insufficient to establish all the elements of his claim against Toledo. He claims that "prior Superintendents of the Police Department which defendant Toledo followed and/or codefendant Toledo himself established policies and procedures under which the Police Department employed personnel inadequately trained, supervised and disciplined to safely and properly carry out the functions assigned to them." (Dkt. 1 at ¶ 28). Plaintiff also claims that Toledo "knew or should have known that there existed numerous incidents of abuse of police power and/or the acts and/or omissions as described in this complaint. Despite the aforementioned, defendant Toledo knowingly failed to implement reasonable or adequate policies, procedures and guidelines in accord with minimum professional standards to avoid and/or minimize the illegal police misconduct set forth in this complaint." (Id.). Lastly, Plaintiff alleges that those acts or omissions amount to gross negligence and a deliberate indifference to Plaintiff's constitutional rights, privileges and immunities under the Fourth Amendment to the U.S. Constitution. (Id. at ¶ 29.)
This is clearly a "failure to train" claim. In City of Canton the Supreme Court stated that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberated indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388, 109 S.Ct. 1197. The Court also stated that the fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Id. at 390-91, 109 S.Ct. 1197. (Citations omitted).
The First Circuit has stated that "the liability criteria for failure to train claims are exceptionally stringent ..." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir.1998) (citations omitted). In Burns v. Loranger, 907 F.2d 233, 239 (1st Cir.1990), the Circuit Court held that "an arguable weakness in police training (or supervision does) not amount to a policy of failure to train arising from deliberate indifference to citizen's constitutional rights." See also Rodriques v. Furtado, 950 F.2d 805, 813 (1st Cir.1991).
Plaintiff has failed to allege facts sufficient to satisfy the stringent criteria for "failure to train" and supervisory liability. His allegations against Toledo do not provide even a thin thread of facts causally relating Toledo's alleged negligence to the acts of the co-defendants. In this case, Plaintiff does not allege prior wrongdoing by the co-defendants, and there is no allegation regarding Toledo's knowledge of these particular actions. Plaintiff provides only general and broad allegations of inadequate training, supervision and discipline to the police force. These are not linked in any way to the particular co-defendants joined in this action.
In addition, Plaintiff fails to provide facts upon which the Court can credit his bald assertion that there was at the time a widespread violation of civil rights of which Toledo had knowledge and failed to attend to. Moreover, even assuming that a widespread violation of civil rights existed, there is no reasonable inference that can be drawn from the other allegations to assume that Toledo was grossly negligent, or that he incurred in willful blindness, or that he had constructive knowledge of these situations, such that Toledo's negligence can be affirmatively linked to the *213 police officers' misconduct. Quite the contrary, Plaintiff has alleged the existence of only one isolated event where he was the victim, and attempts to attach liability upon Toledo based on general, non-specific, conclusory and bald assertions. The element of causality is lacking throughout. Therefore the Court finds that these allegations are not sufficient to state a claim against Toledo for supervisory liability under 42 U.S.C. § 1983. Accordingly, Defendant's motion to dismiss, (Dkt.# 16), is GRANTED.

D. Commonwealth Claims
Toledo also moved the Court to dismiss Plaintiff's Commonwealth Law claims. This motion is GRANTED because to maintain them would be an exercise in futility. After a detailed and thorough review of Plaintiff's allegations, the Court found that they failed to establish a federal claim. The same deficiencies present in the complaint exist for the Commonwealth Law claims and Plaintiff has failed to persuade the Court to believe otherwise. Accordingly, Plaintiff's Commonwealth Law claims are also dismissed.
SO ORDERED.
NOTES
[1] The "heightened pleading standard" is still required for those cases where allegations of improper motive by the state actor constitute an essential element of the plaintiffs' claim. See Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), Judge v. City of Lowell, 160 F.3d 67 (1st Cir.1998). Examples of these are claims of race and gender discrimination under the Equal Protection Clause; cruel and unusual punishment under the Eight Amendment; adverse employment actions based on political affiliation under the First Amendment; and retaliation for exercising free speech or some other constitutional right. Crawford-El, 523 U.S. at 585, 118 S.Ct. 1584.