Roy JAUNDOO, Plaintiff,

v.

Kenneth W. CLARKE,
et al., Defendants.

Civil Action No. 08–10977–JLT.

United States District Court,
D. Massachusetts.

Feb. 22, 2010.

James A. Bello, Morrison, Mahoney LLP, Brandon L. Bigelow, Bingham McCutchen LLP, Stephen G. Dietrick, MA Department of Correction, Boston, MA, for Defendants.

Carolyn B. French, James C. McGrath, Thomas Peter R. Pound, Bingham McCutchen LLP, Boston, MA, for Plaintiff.

## ORDER

TAURO, District Judge.

This court ACCEPTS and ADOPTS the January 22, 2010, Report and Recommendation [# 51] of Chief Magistrate Judge Dein. For the reasons set forth in the Report and Recommendation, this court hereby orders that *Plaintiff's Motion for Leave to File an Amended and Supplemented Complaint* [# 43] is ALLOWED IN PART and DENIED IN PART. Specifically, Plaintiff's motion is ALLOWED to the extent that it seeks to dismiss all claims against Defendant Jeffrey Grimes and to add claims for deliberate indifference in violation of 42 U.S.C. § 1983 against Rosalie K. Berry, Jacquelyn Bernard, and John Kearnen. Plaintiff's motion is DENIED WITHOUT PREJUDICE to the extent that it seeks to add claims of negligence and medical malpractice against University of Massachusetts Correctional Health and Rosalie K. Berry and to add claims of supervisory liability and failure to train.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND

DEIN, United States Magistrate Judge.

### I.  INTRODUCTION

On May 30, 2008, plaintiff Roy Jaundoo ("Jaundoo") brought this action against

various officials and employees of the Massachusetts Department of Correction ("DOC") and UMass Correctional Health Service ("UMCH"), claiming that the defendants unlawfully deprived him of necessary medical care by confiscating his crutches while he was an inmate at MCI–Cedar Junction. At the time Jaundoo initiated the lawsuit, he was proceeding *pro se*. However, on May 26, 2009, this court issued an order appointing counsel to represent him in this matter. Subsequently, Jaundoo, through his counsel, filed a "Motion for Leave to File an Amended and Supplemented Complaint and for Relief from Local Rule 15.1(B)" (Docket No. 43) by which he was seeking to amend his complaint to add additional claims and defendants, and to obtain relief from the requirements of Local Rule 15.1(B). The court ordered additional briefing and oral argument addressing whether the proposed amendments would be futile. (*See* Docket Entry dated 9/10/09). That issue is now ripe for decision.

For all the reasons set forth below, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion for leave to amend be ALLOWED IN PART and DENIED IN PART as follows: (1) all claims against defendant Jeffrey Grimes be DISMISSED; (2) the motion to add claims of deliberate indifference against defendants Rosalie K. Berry, RN, Jacquelyn Bernard and John Kearnen be ALLOWED; (3) the motion to add claims of negligence/medical malpractice against defendants UMCH and Nurse Berry be DENIED WITHOUT PREJUDICE, recognizing the plaintiff's right to assert its claims against UMCH in state court; and (4) the motion to add claims of supervisory liability and failure

to train be DENIED WITHOUT PREJUDICE. Thus, this court recommends that the case proceed only as to Count II of the First Amended Complaint.

## II. STATEMENT OF FACTS

Where, as here, a motion to amend is opposed on grounds of futility, the "proposed amendment 'is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'" *Transwitch Corp. v. Galazar Networks, Inc.*, 377 F.Supp.2d 284, 290 (D.Mass.2005) (quoting *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001)). Accordingly, the court must accept as true all well-pleaded facts set forth in the proposed amended complaint, and give the plaintiff the benefit of all reasonable inferences. *See id.; Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir.1999). In doing so, the "court may not consider any documents that are outside of the [proposed amended] complaint, or not expressly incorporated therein" unless they fall within the narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiff['s] claim; or for documents sufficiently referred to in the complaint." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (quotations and citation omitted).[1] Applying this standard to the instant case, the relevant facts are as follows.

### The Parties

Plaintiff Jaundoo is currently incarcerated at the Souza–Baranowski Correctional Center in Shirley, Massachusetts. (FAC

---

1. This court has only considered the documents attached to the DOC defendants' opposition to the motion for leave to amend to the extent that such documents fall within one of the exceptions to the general rule that the court may not consider any documents outside the complaint or not expressly incorporated therein.

¶ 1).[2] At the time of the events giving rise to this action, Jaundoo was an inmate at MCI–Cedar Junction. (*See id.* ¶¶ 15–42). Both facilities are operated by the DOC. (*Id.* ¶ 1).

The existing defendants include five officials or employees of the DOC (the "DOC defendants") and two employees of UMCH (the "UMCH defendants"). (*See* Verified Compl. (Docket No. 1) at 3–5). The DOC defendants include Harold W. Clarke ("Clarke"),[3] Peter St. Amand ("St. Amand"), John Jones ("Jones"), John Brodbeck ("Brodbeck") and Jeffrey Grimes ("Grimes"), and the UMCH defendants include Mark Waitkevich ("Waitkevich") and Arthur Brewer, M.D. ("Brewer"). (*Id.*). By his proposed amended complaint, Jaundoo is seeking to drop his claims against Grimes, and to assert new claims against DOC employee John Kearnen ("Kearnen"), UMCH, UMCH employees, Rosalie K. Berry, RN ("Berry") and Jacquelyn Bernard ("Bernard"), and UMCH Program Medical Director "Doe." (*See* FAC ¶¶ 2–12).

Throughout the relevant time period, defendant Clarke was the Commissioner of Correction for the Commonwealth of Massachusetts. (*Id.* ¶ 2). In his capacity as Commissioner, Clarke allegedly was responsible for the appointment, supervision and training of DOC employees, and for ensuring that Massachusetts prisons were operated in compliance with federal and state law. (*Id.*). Additionally, Clarke was responsible for the promulgation of policies, rules and regulations governing the prison system, including policies and rules pertaining to inmate medical care, discipline and sanctions. (*Id.*).

Jaundoo alleges that at all relevant times, Amand was the Superintendent, Jones was the Deputy Superintendent and Brodbeck was the Director of Security at MCI–Cedar Junction. (*Id.* ¶¶ 3–5). The plaintiff further alleges that each of these defendants was responsible for the management and operation of the facility, including the care, custody and treatment of prisoners; the enforcement of . policies, rules and regulations; the training of all MCI–Cedar Junction employees in accordance with prison policies, rules and regulations; and the institution's compliance with federal and state law. (*Id.*). Proposed defendant Kearnan was a correctional officer .at MCI–Cedar Junction at the time of the events giving rise to this action. (*Id.* ¶ 6).

Proposed defendant UMCH is a program of the University of Massachusetts Medical School, which has a principal place of business in Westborough, Massachusetts. (*Id.* ¶ 7). UMCH provides medical services to inmates in the custody of the DOC, including inmates at MCI–Cedar Junction, pursuant to an agreement between the Medical School and the DOC. (*Id.*). During the relevant time period, defendant Brewer was the Program Medical Director of UMCH. (*Id.* ¶ 8). In that capacity, Brewer was responsible for the appointment, supervision and training of UMCH employees, as well as for the promulgation of UMCH's policies, rules and regulations. (*Id.*). Allegedly, Brewer was also responsible for ensuring that UMCH medical services were provided in accor-

---

**2.** "FAC" refers to the plaintiff's proposed First Amended Complaint and Jury Demand, which is attached to the plaintiff's motion for leave to amend.

**3.** In his proposed amended complaint, the plaintiff refers to the Commissioner of Correc-

tion as "Kenneth W. Clarke." (*See* FAC ¶ 2). However, as the DOC defendants stated at oral argument, the Commissioner's correct name is Harold W. Clarke. *See, e.g., Guzzi v. Clarke,* 629 F.Supp.2d 161 (D.Mass.2009).

dance with the applicable policies, rules and regulations, and in compliance with the requirements of the law. (*Id.*). Proposed defendant "Doe" is the current Program Medical Director of UMCH. (*Id.* ¶ 9).

Defendant Waikevich and proposed defendants Berry and Bernard are employees of UMCH. (*Id.* ¶¶ 10–12). During the relevant time period, Waikevich was the Health Services Administrator, Berry was a registered nurse and Bernard was a nurse at MCI–Cedar Junction. (*Id.*). Jaundoo alleges that Berry and Bernard were responsible for providing medical care to inmates at the facility. (*Id.* ¶¶ 10–11).

### The Alleged Initial Injury to Jaundoo's Knee

Jaundoo alleges that in June 2007, during his confinement at MCI–Cedar Junction, he tore the patellar tendon in his left knee. (*Id.* ¶ 15; *see also id.* ¶ 16). As a result of his injury, Jaundoo underwent knee surgery at Lemuel Shattuck Hospital. (*Id.* ¶ 16). Following the surgery, medical staff at the hospital instructed Jaundoo to use crutches for ambulation and to avoid placing weight on his left leg. (*Id.*). A physical therapist taught the plaintiff how to use the crutches in order to keep his weight off his left leg and move about safely in a prison setting. (*Id.* ¶ 17).

After returning to MCI–Cedar Junction, the plaintiff relied on his crutches to move around. (*Id.* ¶ 18). In particular, according to Jaundoo, he used his crutches to gain access to the shower area. (*Id.* ¶¶ 18–19). Jaundoo claims that due to the design of the shower room, he had to maneuver over a ledge with the aid of his crutches and then had to move to the far side of the shower area with the use of one crutch in order to reach a working shower nozzle. (*Id.* ¶ 19).

In September 2007, medical personnel at Lemuel Shattuck Hospital examined Jaun-

doo's knee and informed him that he could begin "weightbear as tolerated ambulation." (*Id.* ¶ 21). They also recommended that the plaintiff begin rehabilitation physical therapy designed to strengthen his leg. (*See id.* ¶¶ 21–22). Although Jaundoo performed the exercises he learned in physical therapy, he continued to use crutches to move around. (*Id.* ¶ 22).

Jaundoo returned to Lemuel Shattuck Hospital for an examination in early October 2007. (*Id.* ¶ 23). At that time, he was advised by medical personnel that his "physical therapy can advance [him] to full weightbearing." (*Id.*). As of October 11, 2007, however, Jaundoo had not yet· completed the physical therapy necessary to advance to full weightbearing status. (*Id.* ¶ 24).

### The Alleged Deprivation of Jaundoo's Crutches

On October 11, 2007, proposed defendant Kearnan completed an Incident Report in which he claimed that he had observed Jaundoo "run from the day room to the A–1 unit gate door." (*Id.* ¶ 25; *see also* DOC Def. Mem. (Docket No. 45) at Ex. E). Kearnan further claimed that when he asked the plaintiff where his crutches were, Jaundoo replied, "I don't need them to run, hop or to fight." (*Id.*). Kearnan submitted his report to the Shift Commander and to the Director of Nursing at MCI–Cedar Junction. (FAC ¶ 26; *see also* DOC Def. Mem. at Ex. E). Jaundoo disputes the substance of Kearnan's report, and he alleges that Kearnan submitted the report to the Director of Nursing "for the purpose of depriving Mr. Jaundoo of his crutches and not for any medical purpose." (FAC ¶¶ 25–26).

On October 12, 2007, proposed defendant Berry allegedly wrote a prescription order in which she directed that the plaintiff discontinue the use of crutches. (*Id.*

¶ 27). According to Jaundoo, Berry did not speak with him or conduct an examination of his knee prior to writing the order, but rather based her decision on Kearnan's report. (*Id.*). Thereafter, on October 13, 2007, correctional staff ordered Jaundoo to relinquish his crutches. (*Id.* ¶ 28). The plaintiff refused, and explained that he had recently been evaluated by medical staff who made it clear that he needed additional physical therapy before he could move about safely without crutches. (*Id.*).

Subsequently, the matter was brought to the attention of Grimes, who took Jaundoo to the Health Services Unit where the plaintiff spoke with Bernard and Grimes. (*Id.* ¶ 29). Although Bernard did not conduct an examination, both she and Grimes informed the plaintiff that his crutches would be taken away. (*Id.* ¶¶ 29–30). Jaundoo allegedly protested. (*Id.* ¶ 30). He further explained that medical personnel at the hospital had told him he needed more physical therapy before he could walk without crutches. (*Id.*). Nevertheless, the crutches were taken away. (*Id.*). The plaintiff claims that the defendants' actions in depriving him of his crutches caused him to suffer immediate, debilitating pain in his left knee. (*Id.* ¶ 31).

### The Alleged Second Injury to Jaundoo's Knee

On October 14, 2007, Jaundoo submitted a sick call request in which he stated that he was experiencing sharp pains in his left knee and requested to be evaluated by a doctor. (*Id.* ¶ 32). He also filed an inmate grievance form in which he complained of "being denied prescribed medical treatment" and further stated as follows:

[o]n 10/13/07 ... Lt. Grimes escorted me to the HSU and I was told I had to give my crutches back [due] to a[n] incident report written by Sgt. Kerns [sic]. I just had surgery (patella tendon) and was told on the 4th of this month that I

was going to start walking and putting weight on my leg, with the aid of crutches. I am in a lot of pain when I have to put my entire weight on my left leg.

(*Id.* ¶ 33 (alterations in original); *see also* DOC Def. Mem. at Ex. A). Jaundoo requested the return of his crutches as relief for his grievance. (*Id.*).

On October 15, 2007, after receiving no response to either his sick call request or his grievance, Jaundoo submitted a second sick call request in which he reported that he was experiencing sharp pains in his left knee, that his knee hurt when he put his weight on it and that his knee had given out earlier that day. (*Id.* ¶ 34). However, the plaintiff contends that he was not seen by any members of the prison medical staff during the time period from October 14 through October 17, 2007. (*Id.* ¶ 35). He also claims that he continued to experience debilitating pain in his left knee, and that the delay in medical treatment violated DOC and UMCH policies requiring the processing of inmate requests for medical care within 24 hours. (*Id.* ¶¶ 35–36).

On October 18, 2007, Jaundoo went to take a shower. (*Id.* ¶ 37). He alleges that as he was attempting to maneuver through the shower area without crutches, his left knee gave out from underneath him, and he fell to the floor. (*Id.*). As a result of the fall, Jaundoo suffered a severe fracture of his left patella, which required further surgery. (*Id.* ¶¶ 37, 40).

Although Jaundoo received a new pair of crutches following his fall in the shower, he had to wait six days for his surgery. (*Id.* ¶¶ 38–39). Jaundoo contends that he was given no reason for the delay. (*Id.* ¶ 39). He also asserts that while awaiting surgery, he remained in bed with debilitating pain, and only received pain medication on an intermittent basis. (*Id.*).

The plaintiff's second knee surgery was performed on October 24, 2007 at Lemuel Shattuck Hospital. (*Id.* ¶ 41). In the hospital Discharge Summary, Jaundoo's surgeon noted that the plaintiff had been doing well with his rehabilitation until he fell in the shower and fractured his patella. (*Id.*). She also reported in relevant part as follows:

> The patient tells us that the crutches were removed from him by the office[r]s on site at Cedar Junction and with a weak leg he fell in the shower. The patient gives no further information as to why the crutches were removed.

> His past medical history is significant for patellar tendon repair in June 2007.

> . . .

> Why the crutches were removed from this patient is unknown to us. . . .

(*Id.*).

### Defendants' Responses to Jaundoo's Complaints

The plaintiff claims that the prison medical staff received his October 14, 2007 sick call request on October 15, 2007, but that it was not reviewed by a doctor until October 26, 2007. (*Id.* ¶ 42). By that time, Jaundoo was recovering from his second surgery at the Souza–Baranowski Correctional Center. (*Id.*). According to the plaintiff, the doctor who reviewed the sick call request reported that Jaundoo was no longer at MCI–Cedar Junction, and therefore, did not require medical treatment. (*Id.*).

The plaintiff also contends that UMCH staff received his October 14, 2007 grievance form on October 16, 2007, but did not respond until November 12, 2007. (*Id.* ¶ 43). At that time, defendant Waitkevich notified Jaundoo as follows:

> I received your formal grievance dated 10/14/2007 specifically regarding your

crutches. After consideration of your grievance and further investigation into the matter, it was determined that on 10/11/07 correctional staff observed you run from the day room to the A–1 Unit gate to see the recreation officer. You were asked where your crutches were and correctional staff reported you replied, "I don't need them to run, hop or fight." My understanding is that your crutches were removed at that time. I understand since that time you have reinjured your left knee and the crutches have been returned.

(DOC Def. Mem., Ex. B; *see also* FAC ¶¶ 43–44). Waitkevich allegedly conducted no investigation to determine why the medical staff decided to remove Jaundoo's crutches based on the report of a correctional officer. (*Id.* ¶ 44). Nor did he seek to determine whether the medical staff had examined Jaundoo before making that decision. (*Id.*).

Additional factual details relevant to this court's analysis are described below.

## III. ANALYSIS

By his motion to amend, Jaundoo is seeking to drop his claims against Grimes, to assert negligence/medical malpractice claims against proposed defendants Berry and UMCH, and to add claims against proposed defendants Berry, Bernard and Kearnan, pursuant to 42 U.S.C. § 1983, for deliberate indifference to his serious medical needs. Additionally, Jaundoo is seeking to hold Brodbeck, Clarke, St. Amand, Jones, Brewer and proposed defendant "Doe" liable, pursuant to § 1983, under a theory of supervisory liability and failure to train. The defendants have not opposed the motion to the extent that it seeks to dismiss Grimes from the lawsuit and to add claims for deliberate indifference against Berry and Bernard.[4] Accordingly,

---

4. The defendants do object to the assertion      of negligence/medical malpractice claims

the court recommends that the motion be allowed with respect to those proposed amendments to the complaint. With respect to the remaining claims, this court recommends that the motion to amend be allowed as to the proposed claim for deliberate indifference against Kearnan, and denied as to the proposed claims for negligence/medical malpractice against UMCH and Berry and the proposed supervisory claims for the reasons detailed below.

### A. *Motion to Amend Standard of Review*

The decision whether to grant a motion for leave to amend falls within the trial court's discretion. *Sheehan v. City of Gloucester*, 321 F.3d 21, 26 (1st Cir.2003). "Leave to amend under Rule 15 'is freely given when justice so requires' absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." *Transwitch Corp. v. Galazar Networks, Inc.*, 377 F.Supp.2d 284, 290 (D.Mass.2005) (quotations and citation omitted), and cases cited. The "futility" assessment is governed by the standard for motions to dismiss under Fed.R.Civ.P. 12(b)(6). *See id.* Consequently, an amendment will not be deemed futile unless the well-pleaded facts, taken as true and viewed in favor of the plaintiff, fail to support a " 'plausible entitlement to relief.' " *See Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009). " 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.' " *Id.* (quoting *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)) (internal citations omitted). Second, the complaint must state "a plausible claim for relief[.]" *Id.* (quoting *Ashcroft*, 129 S.Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—'that the pleader is entitled to relief.' " *Id.* (quoting *Ashcroft*, 129 S.Ct. at 1950) (internal citations omitted; alterations in original).

### B. *Count I: Claim for Negligence/Medical Malpractice*

By his proposed Count I, Jaundoo is seeking to assert claims for negligence/medical malpractice against UMCH and Berry. The UMCH defendants contend that these claims are futile. Specifically, they argue that UMCH is an agency of the Commonwealth of Massachusetts and is therefore entitled to sovereign immunity under the Eleventh Amendment. (UMCH Def. Mem. (Docket No. 44) at 3–4). They also assert that Berry is immune from suit under the Massachusetts Tort Claims Act ("MTCA") because her alleged

---

against Berry and Bernard, but have not objected to the addition of a claim of deliberate indifference against them. Moreover, the defendants have misread the proposed amendment—the plaintiff is not asserting a negligence/medical malpractice claim against Bernard.

conduct occurred while she was acting as a "public employee." (*Id.* at 5–6).[5] This court agrees that the proposed defendants are immune from suit for negligence/medical malpractice in this forum.[6] Accordingly, this court recommends that the motion to amend to add Count I be denied as futile, but that the denial be without prejudice to the plaintiff's right to assert his claim in state court.

### Sovereign Immunity

■ "As a general matter, states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent. This immunity extends to any entity that is an arm of the state." *Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 99 (1st Cir.2002) (internal citations and quotations omitted). Accordingly, if UMCH is an agency or arm of the Commonwealth of Massachusetts, it "is protected by the state's immunity from suit under the Eleventh Amendment unless that immunity is waived." *Adams v. Cousins,* Civil Action No. 06–40117–FDS, 2009 WL 1873584, at *6 (D.Mass. Mar. 31,

2009) (slip op.). As detailed herein, UMCH is a state agency, and Jaundoo must pursue his claims against it in state court.[7] The fact that this might require litigation to proceed in two courts does not enable this court to assert jurisdiction over UMCH.

"Under the Massachusetts Tort Claim Act, Mass. Gen. Laws ch. 258, § 2, the Commonwealth has waived sovereign immunity for certain suits, but only in the Superior Court. Mass. Gen. Laws ch. 258, § 3." *Adams,* 2009 WL 1873584, at *6. Specifically, the MTCA provides in relevant part:

[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable to levy of execution on any real and personal property to satisfy

5. The UMCH defendants also argue that the motion to add a negligence/medical malpractice claim against Berry should be denied because it would cause undue delay. (UMCH Def. Mem. at 6). Because this court finds that Berry is immune from suit in this court for negligence/medical malpractice, it is unnecessary to reach this issue.

6. It is unclear whether the defendants are also claiming that, since UMCH is immune from suit, its current Program Medical Director "Doe" also is immune from the claims of supervisory liability and failure to train raised by the plaintiff in Count III of the FAC. Such a claim of immunity must fail. A suit against "Doe" in his official capacity is, in reality, a suit against UMCH. *See Rosario–Urdaz v. Rivera–Hernandez,* 350 F.3d 219, 222 (1st Cir.2003). Nevertheless, "the *Ex Parte Young* doctrine permits suits to proceed against state officers in their official capacities to compel them to comply with federal law." *Vaqueria Tres Monjitas, Inc. v. Irizarry,*

587 F.3d 464, 477–78 (1st Cir.2009). Because Jaundoo is seeking only prospective injunctive relief against proposed defendant "Doe," his claim is not precluded under the doctrine of sovereign immunity. *See id.* at 478 (suits brought pursuant to *Ex Parte Young* "may only seek injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution" or else they will run afoul of the Eleventh Amendment). As detailed, infra, however, the motion to amend to add Count III should be denied on other grounds.

7. *See Shedlock v. Univ. of Mass. Corr. Health & Criminal Justice Program,* et al., C.A. No. 08–11969–RGS, in which the District Court, on June 30, 2009, allowed UMCH's motion to dismiss the plaintiff's civil rights claims on the grounds that UMCH is an agency of the state and is therefore immune from suit under the Eleventh Amendment. (*See* attachments to Pl. Resp. (Docket No. 46)).

judgment, and shall not be liable for interest prior to judgment or for punitive damages or for any amount in excess of one hundred thousand dollars. Mass. Gen. Laws ch. 258, § 2. The statute further provides, in relevant part, that "[t]he superior court shall have jurisdiction of all civil actions brought against a public employer." Mass. Gen. Laws ch. 258, § 3. However, "[t]he Commonwealth has not consented to be sued in federal courts." *Adams*, 2009 WL 1873584, at *6. Accordingly, if UMCH is an arm of the state, Jaundoo may only pursue his negligence/medical malpractice claim against it in state superior court. For the reasons that follow, this court finds that UMCH is an arm of the state.

As Jaundoo has alleged, UMCH is a program of the University of Massachusetts Medical School ("UMMS"), and it provides medical services to DOC inmates pursuant to a contract between UMMS and the DOC. (*See* FAC ¶ 7; UMCH Def. Mem. at 3). UMMS "itself is not a separate corporate entity, but rather is a division of the University of Massachusetts." *Neo Gen Screening, Inc. v. New England Newborn Screening Program*, Civil Action No. 98–10394–GAO, 1998 WL 35278283, at *2 (D.Mass. Dec. 3, 1998), aff'd 187 F.3d 24 (1st Cir.1999). *See also* Mass. Gen. Laws ch. 75, § 34 (directing trustees of University of Massachusetts to maintain a medical school). Moreover, as part of the University of Massachusetts, UMMS is an " 'arm' of the state entitled to Eleventh Amendment immunity." *Orell v. UMass Mem'l Med. Ctr., Inc.*, 203 F.Supp.2d 52, 60 (D.Mass.2002) (UMass Memorial Medical Center, "as a part of the University of Massachusetts, is a public institution established under the laws of the Commonwealth and is, accordingly, an 'arm' of the state entitled to Eleventh Amendment immunity"). Because UMCH is a program operated by the UMMS, it too is an arm of

the state. *See Neo Gen Screening, Inc.*, 1998 WL 35278283, at *1 (Eleventh Amendment deprives district court of jurisdiction over action against program run by UMMS). Accordingly, the plaintiff is barred from asserting his tort claim against UMCH in federal court under the doctrine of sovereign immunity, and this court recommends that the motion to amend this claim be denied without prejudice to the plaintiff's right to proceed in state court.

### Immunity as a "Public Employee"

█ This court also finds that Jaundoo's proposed negligence/medical malpractice claim against Berry is futile because Berry is entitled to immunity from such claims under the MTCA. Pursuant to the MTCA, "no ... public employee ... shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment[.]" Mass. Gen. Laws ch. 258, § 2. *See also Martinez v. Wolferseder*, 997 F.Supp. 192, 195 (D.Mass.1998) ("Under the MTCA, a public employee is not personally liable for personal injury caused by his negligent or wrongful act or omission while acting within the scope of his employment"). Jaundoo alleges that at all relevant times, Berry "was acting within the scope of her employment as an employee of [UMCH]." (FAC ¶ 10). As described above, UMCH is a public employer. Therefore, Berry was a public employee at the time of the events giving rise to this action. *See Williams v. Hartman*, 413 Mass. 398, 400, 597 N.E.2d 1024, 1026 (1992) (basic question for purposes of determining whether an individual is a public employee "is whether [the] person is subject to the direction and control of a public employer") (quotations and citations omitted). Thus, she is immune from liability for negli-

gence/medical malpractice, and this court recommends that the motion to amend to assert such a claim against her be denied as well.

### C. Count II: Claims for Deliberate Indifference

■ The DOC defendants oppose Jaundoo's motion to amend to add a claim for deliberate indifference against Kearnan pursuant to 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir.1997), *cert. denied*, 522 U.S. 819, 118 S.Ct. 71, 139 L.Ed.2d 32 (1997). For purposes of the present motion, Kearnan does not dispute that he was acting in his official capacity as a DOC correctional officer and was therefore acting under color of state law. Nor does he dispute that the plaintiff has stated a claim for deliberate indifference to his serious medical needs in violation of his rights under the Constitution. Rather, Kearnan contends that Jaundoo's proposed claim against him is futile because the plaintiff has failed to plead facts, as opposed to conclusory allegations, showing that Kearnan was responsible for the deprivation of Jaundoo's crutches. (*See* DOC Def. Mem. at 4–7).[8] This court finds that the allegations of the proposed amended complaint are suffi-

ciently detailed to state a claim for relief against Kearnan.

As described above, Jaundoo alleges that on October 11, 2007, Kearnan submitted an Incident Report in which he falsely claimed that he had seen the plaintiff running, and that the plaintiff had said he did not need his crutches to "run, hop or to fight." (FAC ¶ 25). Jaundoo further alleges that Kearnan submitted the report to the Director of Nursing in order to deprive Jaundoo of his crutches, and that Berry relied on Kearnan's report as the basis for her order that Jaundoo's use of crutches be discontinued. (*Id.* ¶¶ 26–27). Thus, the plaintiff has alleged specific facts showing that Kearnan intentionally created and submitted a false report for the purpose of depriving Jaundoo of his crutches. He has also alleged specific facts showing that Kearnan's conduct did in fact cause the plaintiff to lose his crutches. This is sufficient to support a claim for relief under the applicable standard. *See Ashcroft*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The DOC defendants argue that Kearnan cannot be held liable because, under DOC policy, medical personnel rather than correction officials are responsible for the delivery of health care to inmates in DOC custody. (*See* DOC Def. Mem. at 6–7). Even assuming this is an accurate description of DOC policy,[9] it is insufficient to

---

8. In support of the argument that there is no claim against Kearnan, the DOC defendants point to the fact that Kearnan was not named in the original complaint. (*See* DOC Def. Mem. at 4). The defendants do not and cannot contend that the addition of Kearnan is untimely or prejudicial. This court does not find it significant that the original *pro se* complaint did not include Kearnan. The proposed amended complaint will be evaluated on its own merits.

9. Although the DOC defendants quoted the policy in their memorandum in opposition to the motion to dismiss, they did not provide a copy of the policy. Moreover, as plaintiff argues, the defendants have been somewhat inconsistent in their position as to who was responsible for taking away the plaintiff's crutches.

establish futility. The causal connection required under § 1983 "can be established not only by some kind of personal participation in the [constitutional] deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 50 (1st Cir.2009) (quoting *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir.1989)) (punctuation omitted). In other words, "an actor is 'responsible for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.'" *Id.* (quoting *Gutierrez–Rodriguez*, 882 F.2d at 561 (quotations and citation omitted)). Even if Kearnan was not directly responsible for the medical decision to take away the plaintiff's crutches under the DOC's policy, the plaintiff has alleged facts showing that his conduct set in motion a series of actions by others that caused the alleged constitutional deprivation. Accordingly, this court recommends that Jaundoo's motion to amend be allowed with respect to the addition of Kearnan as a defendant.

### D. Count III: Claims for Supervisory Liability and Failure to Train

■ In Count III of his proposed amended complaint, Jaundoo seeks to assert claims against Clarke, St. Amand, Brodbeck, Jones, Brewer and Doe for supervisory liability and failure to train. The defendants contend that these claims are futile because the plaintiff has failed to plead any facts affirmatively linking the defendants to the alleged unconstitutional conduct or indicating that it was manifest to the defendants that their conduct was likely to result in a constitutional violation. This court agrees, and finds that the motion to amend should be denied with respect to these claims.

"[S]upervisory liability cannot be predicated on a respondeat superior theory. Supervisors may only be held liable under § 1983 on the basis of their own acts or omissions." *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir.2005) (internal citation omitted). Accordingly, as the First Circuit recently explained,

> [i]n the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."

*Sanchez*, 590 F.3d at 49 (quoting *Camilo–Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir.1999)).

In the instant case, Jaundoo is relying upon the latter scenario. He does not claim that any of the supervisory defendants directly participated in the decision to deprive him of his crutches or otherwise directed his medical treatment. Rather, he alleges that they were responsible for the training and supervision of DOC and/or UMCH personnel at MCI–Cedar Junction, and that they failed to adequately train and supervise their subordinates regarding, "*inter alia*, the circumstances under which inmates receive ambulatory aides, such as crutches, and the process by which the use of such ambulatory aides is discontinued[,]" and "existing policies that require that prisoner requests for medical care be processed within 24 hours." (FAC ¶¶ 46, 48, 59–61, 63, 65). Jaundoo also claims that the acts and omissions of these defendants "constitute[d] deliberate indifference to Mr. Jaundoo's constitutional

rights" and caused him to suffer harm. (*Id.* ¶¶ 66–67).

Assuming, *arguendo*, that there should be training about when inmates are given crutches, the plaintiff has nevertheless failed to assert any facts from which supervisory liability can be established.

> Absent participation in the challenged conduct, a supervisor can be held liable only if (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was *affirmatively linked* to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to *deliberate indifference.* Deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights. The "affirmative link" requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.

*Hegarty v. Somerset County,* 53 F.3d 1367, 1379–80 (1st Cir.1995) (internal quotations, alterations and citations omitted).

The proposed complaint lacks sufficient factual allegations to establish an "affirmative link" between the actions of the supervisory defendants and the alleged underlying constitutional violations. As an initial matter, the defendants cannot be held liable solely on the basis of their employment positions. *See Sanchez,* 590 F.3d at 49–50 (under Section 1983, government officials may not be held liable for the actions of their subordinates based on a theory of *respondeat superior*). Consequently, Jaundoo's allegations that these individuals were responsible for promulgating and enforcing policies, rules and regulations, and for training subordinates in accordance with applicable policies, rules and regulations, alone are insufficient to state a claim for relief.

Moreover, the plaintiff has relied on nothing more than conclusory allegations to support his claims. For example, but without limitation, while Jaundoo alleges generally that the defendants failed to train and supervise UMCH and DOC employees under their supervision, he has failed to allege any facts showing that the particular individuals responsible for the decision to take away his crutches were deprived of adequate training or supervision, and that such deprivation was a cause of his injury. "A generalized showing of a deficient training program is not sufficient. The plaintiff must establish that the particular officers who committed the violation had been deprived of adequate training, and that this specific failure in training was at least a partial cause of the ultimate injury." *Whitfield,* 431 F.3d at 10. Nor has Jaundoo alleged any facts, as opposed to bald assertions, to indicate that his harm was caused by a widespread failure to train or supervise rather than from an isolated instance of misconduct. "[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's ... deliberate indifference." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994).[10] Furthermore, the plaintiff has not alleged any instances of prior wrongdoing or other facts that would have alerted the supervisory defendants to the possibility that their conduct was likely to lead to the violation of an inmate's constitutional

---

**10.** Although Jaundoo alleges that the DOC and UMCH "systemically fail to comply with their own existing policies that require that prisoner requests for medical care be processed within 24 hours[,]" he has not alleged that this failure led to the confiscation of his crutches or otherwise caused his harm. (*See* FAC ¶¶ 47, 64).

rights. *See Rodriguez–Vazquez v. Cintron–Rodriguez*, 160 F.Supp.2d 204, 212 (D.P.R.2001) (no claim for supervisory liability and failure to train where plaintiff did not allege prior wrongdoing by supervisor's subordinates or that supervisor knew of actions giving rise to alleged constitutional violations). Therefore, Jaundoo has failed to plead facts showing that it would have been "manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Hegarty*, 53 F.3d at 1380 (quotations and citations omitted).

As the Supreme Court has instructed, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S.Ct. at 1950. Accordingly, in determining whether allegations state a plausible claim for relief, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Because this court finds that the plaintiff has done little more than assert bald assertions and legal conclusions in support of his claims for supervisory liability and failure to train, his allegations are not entitled to an assumption of truth and are not sufficient to state a claim. Therefore, this court recommends that Jaundoo's motion to amend be denied without prejudice with respect to Count III.[11]

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion for leave to amend (Docket No. 43) be ALLOWED IN PART and DENIED IN PART WITHOUT PREJUDICE. Specifically, the motion to amend to add Counts I and III of the proposed First Amended Complaint should be denied without prejudice, recognizing the plaintiff's right to proceed against UMCH in state court. The plaintiff should be allowed to amend his complaint to proceed with Count II of the First Amended Complaint.[12]

[11]. Jaundoo has requested that to the extent this court finds his allegations to be insufficient, it deny his motion for leave to amend without prejudice so that he may seek further leave to cure any deficiencies. (*See* Pl. Resp. at 7 n. 5). The defendants have not opposed this request. Moreover, under Fed.R.Civ.P. 15(a), the court is directed to "freely give leave [to amend] when justice so requires." Accordingly, to the extent the motion is denied, this court recommends that it be denied without prejudice.

[12]. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–05 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). Accord *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st

Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v.* *Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).